WILLIAM BOARDMAN, Respondent, *v.* BERNARDINO FLOREZ, Appellant.

*Equity—Trustee—Agent.*—A. being indebted to B. by note, as security for its payment transferred to B. a note of C.'s for a larger amount, secured by a deed of trust upon land, and the deed of trust itself. The note of C. not being paid, B. had the land sold by the trustee, and purchased at the trustee's sale. This land B. subsequently sold for an amount more than sufficient to pay the note of A. *Held*, that, in collecting the collateral note, B. was acting as the agent of A., and was subject to all rights and disabilities incident to that character, and could not, under the circumstances, speculate for his private gain, to the prejudice of his principal.

*Appeal from St. Louis Court of Common Pleas.*

*Sharp & Broadhead*, for appellant.

*T. G. Davis*, for respondent.

WAGNER, Judge, delivered the opinion of the court.

This was an application for an injunction. It appears upon the record that respondent made his negotiable prom-

issory note, endorsed by one Evans, payable to appellant, for the sum of twelve hundred and twenty-four dollars, due one year after date ; at the same time he delivered to appellant, as collateral security, a negotiable note made by one Edward Bicknor, payable to respondent, for the sum of .fifteen hundred dollars, secured by a deed of trust on certain real estate in Macoupin county, Illinois, and delivered to him the deed of trust also. After the maturity of the note, without giving any notice to respondent, the appellant procured the land to be sold under the deed of trust, and became the purchaser thereof at the sale, for the sum of five hundred and seven dollars. Afterwards, he re-sold the land for fifteen hundred dollars. Bicknor, the grantor in the deed of trust, was insolvent, and possessed no other property out of which to obtain satisfaction on the fifteen hundred dollar note. The appellant then brought suit against the respondent on the note made and executed to him for $1,224, and claimed judgment for the residue, after deducting, as a credit, the five hundred and seven dollars realized from the sale under the deed of trust. The respondent then filed his bill to restrain and enjoin the appellant from the further prosecution of his suit, claiming that he was entitled to the benefit of the amount for which the land was re-sold ; that the note was thereby satisfied, and that there was a balance coming to him. The court, after hearing the cause, found for the respondent, and rendered a perpetual injunction against the appellant and his attorneys, prohibiting them from further prosecuting the action.

We find it unnecessary to examine the principles of law which govern in cases of pledges of personal property, or the rights, liabilities and responsibilities which exist between pledgor and pledgee. The counsel have argued the case solely on the hypothesis, that the delivering the note with the deed of trust, as security, was a simple pledge ; but, in our opinion, the merits and the law of the case stand on entirely different, and more satisfactory grounds. In construing a contract, or transaction, resort is had to a variety of legal

rules to aid in its proper interpretation; but all rules are subordinate and secondary to that primary rule which requires that the construction should be according to the real intention of the parties. This rule is paramount, and all others which are merely auxiliary must yield to it. The object of the respondent in delivering to appellant the fifteen hundred dollar note, was not only to make him secure, but, by delivering the deed of trust, he also evinced his intention of giving him the means of enforcing its collection, and applying its proceeds to the discharge of the note due by him to appellant. The appellant, when he proceeded to collect the note, and, in furtherance of that purpose, caused the land to be sold at trustee's sale, placed himself in the attitude of an agent or attorney for collection, and was subject to all the rights and disabilities incident to that character. He stood on the footing of a trustee, bound faithfully to carry out the objects of the trust, and could not, under any circumstances, speculate for his own private gain, to the prejudice of his principal. No rule is better established than that an agent or trustee will not be allowed, while transacting the business of his principal or *cestui que trust*, to derive a private benefit, to the injury of the person for whom he acts—2 Sto. Eq. Jur. § 1211–1211 *a*.

Chancellor Walworth says that it is a rule of equity of universal application, that no person can be permitted to purchase an interest in property where he has a duty to perform which is inconsistent with the character of purchaser—Terry v. Bk. of Orleans, 9 Paige, 663 ; Van Epps v. Van Epps, 9 Paige, 237–41. And the rule is not applied alone to any particular class of persons, such as guardians, trustees, solicitors, attorneys and agents, but is of universal application to all persons who come within the principle. It is general, and will apply not merely in those cases where the trust or confidence is absolutely violated, but where the circumstances are such that there would or might be a temptation to violate it—Moore v. Moore, 4 Sandf. Ch. 37 ; 1 Seld. 256. The Supreme Court of the United States has said, the disa-

bility is a consequence of that relation which imposes on the one a duty to protect the interest of the other, from the faithful discharge of which duty his own personal interest may withdraw him. In this conflict of interest, the law wisely interferes—Michaud v. Girod, 4 How., U. S. 252. "The wise policy of the law has therefore put the sting of disability into the temptation, as a defensive weapon against the strength of the danger which lies in the situation"—Davon v. Fanning, 2 Johns. Ch. 270; Will. Eq. Jur. 605.

In the great case of Fox v. Mackreth, Ld. Chan. Thurlow said, "if a trustee, though strictly honest, buys an' estate himself and then sells it for more ; according to the rules of a court of equity, from general policy, and not from any peculiar imputation of fraud, he should not be permitted to sell to himself, but should remain a trustee to all intents and purposes." And in that case, having sold the property at a highly advanced price, he was decreed a trustee, as to the sums produced by the second sale, for the original vendor— 2 Bro. C. C. 400; S. C. 2 Cox, 320; Hall v. Hallett, 1 Cox, 134; *ex parte* Reynolds, 5 Ves. 707.

Now, by the application of these rules to the present case, the conclusion follows as a necessary corollary. The respondent delivered to the appellant a promissory note to secure an indebtedness which the former owed to the latter, but, to enable him to make that security effective, and also to liquidate and pay off the indebtedness, he delivered to him the deed of trust. The appellant, for the purpose of collecting his debt, without notifying the respondent, gets the trustee to advertise and sell the property, and becomes the purchaser at about one-fourth of its true value. He then sells the same property for the sum of fifteen hundred dollars, more than sufficient to discharge respondent's indebtedness to him, and then comes into court and asks for judgment for the amount of his demand, after crediting it with five hundred and seven dollars, being the purchase money at which he bid in the land at the trustee's sale. This is directly violative of the trust and confidence reposed in him by the respondent. Neither

morality nor equity, which regards and enforces straightforward, honest dealing, will permit or endure such a proceeding.

The judgment is affirmed. Judge Holmes concurs; Judge Lovelace absent.