STATE OF MISSOURI, Plaintiff in Error, *v.* A. J. McKAY *et al.*,
Defendants in Error.

1. *Equity—Railroad, sale of—Act of Legislature confirming—Rescission and cancellation — Jurisdiction.*—Where, pending a bill in equity for rescission of the sale of a railroad by the governor, and also for an account and for damages, an act was passed by the Legislature confirming the sale, although the act is a complete bar to that part of the petition which demanded rescission, yet the court is not thereby deprived of all jurisdiction of the cause, but jurisdiction will be retained and justice administered as to the remaining portion of the petition.

2. *Equity — Railroad, sale of—Reseizure under clause of forfeiture in deed, does not ratify.*—After sale of a railroad by the governor, under an act of the Legislature, his seizure of the same, under and by virtue of a clause of forfeiture contained in the act and the deed of conveyance, was not an admission by the State that the sale and transfer were legal, nor did the seizure amount to a ratification of the sale. In the sale, the governor was not acting in his political or executive capacity, but merely as a special agent; and the duty might have devolved upon any other person as well. And if he proceeded beside the law or outside the law, the State would not be bound by his tortious acts or trespasses.

3. *Equity — Railroad, sale of—Reseizure by governor — Clause of forfeiture like one of re-entry by landlord.*—Where, after the sale of a railroad by the governor, seizure was made on account of a non-compliance with the terms of the contract, for the purpose of foreclosing the State's lien or mortgage, the clause of forfeiture was not distinguishable in principle from one of re-entry by a landlord for condition broken; and such seizure, even if in all respects legal and regular, did not deprive the State of any previous existing right.

4. *Equity — Railroad, sale of, by commissioners — Action for rescission, account, and damages — What damages plaintiff is entitled to, and against whom.*—If the commissioners for the sale of a railroad combined and confederated with other persons in the purchase of the property, the State will be entitled to whatever speculations they made out of the sale; and the other persons, by entering into the league with the full knowledge of the facts, will also be amenable.

*Error to St. Louis Circuit Court.*

*Wingate, Napton,* and *Knight,* for plaintiff in error.

*Cline, Jamison & Day,* for defendants in error.

WAGNER, Judge, delivered the opinion of the court.

This was a petition in the nature of a bill in equity, filed by the attorney-general in behalf of the State, charging fraud in

the sale of the Iron Mountain Railroad, praying for an account, and asking for a rescission. The petition is very long, and sets forth with great minuteness, particularity, and detail, the circumstances connected with the sale and transfer of the road, and the transactions which are alleged to be fraudulent. In substance it recites, among other things, that in pursuance of a public act of the General Assembly of the State, entitled "An act to provide for the sale of certain railroads and property by the governor, to foreclose the State's lien thereon, and to secure an early completion of the Southwest Branch Pacific, the Platte Country, the St. Louis & Iron Mountain, and Cairo & Fulton railroads, of Missouri," approved February 19, A. D. 1866, the defendants, Robert A. Watt and Bernard G. Farrar, together with one C. S. Rankin, were appointed commissioners, to constitute a board of commissioners, for the sale of the St. Louis & Iron Mountain Railroad, its franchises, etc., under said act, and that they assumed and took upon themselves the duties of such commissioners, qualified themselves, and by reason thereof it became and was their duty, or that of a majority of them, to invite bids and proposals in writing for the purchase of said road and other property belonging thereto, and to award the same to the highest and best bidder or bidders therefor, to the end that the same might be sold for the highest market value, and for the use and interest of the plaintiff; that on or about the eighth day of November, A. D. 1866, said commissioners, in pursuance of notice previously given, received proposals in writing for the purchase of said St. Louis & Iron Mountain Railroad and its franchises, as follows, to-wit: from Messrs. Dinsmore & Co., $1,027,000; J. C. Fremont, $1,000,000; J. A. Sumner & Co., $750,000; the Southeast Missouri Railroad Company, $600,000; A. J. McKay, for himself and others, $550,000.

It is further alleged and charged that said Watt and Farrar, commissioners as aforesaid, and composing a majority of said board, did not award said St. Louis & Iron Mountain Railroad, its franchises and appurtenances, to the highest and best bidder, as by law they were required and bound to do; but, on the contrary thereof, they, knowing the great value of the road, with its

franchises and appurtenances, and the utter inability of the said McKay to pay the amount of his bid, or to extend, construct, and complete the road—one of the main objects to be accomplished by the law providing for the sale—and well knowing that McKay was the lowest, and worst, and most irresponsible bidder, and against the protest of Rankin, the other commissioner, combined, colluded, and confederated with other persons, to-wit: with defendants McKay, Vogel, Simmons, and others; and, to enable such persons and themselves to realize out of the transaction, at the expense and to the great detriment of the plaintiff, divers large sums of money, did, on or about the eleventh day of November, 1866, unlawfully, corruptly, and fraudulently award said road, its franchises and appurtenances above described in the proposal, to the said McKay, Vogel, and Simmons, they at the same time being the lowest and worst bidders therefor; and that the said property so awarded was actually worth the sum of two millions of dollars.

It is further averred that all the defendants named in the petition formed themselves into an association called a "ring," and that they raised large sums of money, to be expended to employ persons who were in the confidence of the governor of this State, and who were supposed to have influence with him, to procure his approval of the sale by the commissioners; that by imposing on him, and keeping him ignorant of the real facts, and by resorting to corrupt appliances of which he was not advised, he was induced to approve, and did approve, the same.

The petition also charges that the defendant, Thomas Allen, was fully apprised and knew of all the colludings and confederations of the other defendants, and that the said award made by the commissioners was collusive and fraudulent, and that he had previously protested against the same as unjust, and that, notwithstanding the premises, he joined in the confederation, and agreed and undertook to assist in overreaching the governor, and in inducing him to approve the said award, with the expectation and understanding by and between him, the said Allen, and the other defendants, that the other defendants to whom the road might be conveyed should convey the road to him or give him a

controlling interest therein, and that in pursuance of said agreement they did colorably transfer the road to him, for which he agreed to pay said defendants the sum of $375,000 as a bonus, of which the sum of $275,000 was payable in cash, and the sum of $100,000 in paid-up stock of said road.

There is a further averment that, immediately after the approval by the governor, brought about by the collusive, fraudulent, and evil practices above referred to, the defendants sold and transferred the road, together with its franchises and appurtenances, to the said Allen for the advancement or bonus as above specified.

The petition then prays that the sale may be set aside, and that the conveyance be surrendered up and canceled; that the defendants be required to render a full, true, and perfect account of the earnings of the road while in their possession, to be paid over to the plaintiff; and that a decree be finally rendered that the defendants pay such damages as the court may find have been sustained by the plaintiff; and that the said confederating defendants, and each of them, by the order, judgment, and decree of the court, be directed and required to account for, and pay to the plaintiff, all and every sum or sums of money so fraudulently obtained by them, and that the said $100,000 of paid-up stock in said road be decreed to belong to the plaintiff, and for general relief.

The defendants filed an amended answer, in which they deny each and every allegation contained in the bill. In addition they set up two defenses in the nature of pleas in bar, wherein they allege: First, that after said sale, conveyance, and delivery of the road by the State to said McKay, Vogel, and Simmons, and during the pendency of this suit, the State seized and took into its possession said road, under and by virtue of the clause of forfeiture in the deed conveying the same, by means of which the sale was confirmed in the face of this bill, and the State retook the road and the title thereto, in confirmation of the conveyance to said McKay and others, and all those claiming by, through, or under them, and became again seized at law and in equity of the entire subject matter of this suit, the title to which reverted and

returned to the State. Second, that by the act of the Legislature of the State of Missouri, approved March 17, 1868, said State again approved said sale, and confirmed the title to said road in Thomas Allen, one of the defendants, to whom said road had been transferred by said McKay, Vogel, and Simmons, on condition of Allen's assumption of the mortgages for the balance of the purchase money given by said McKay, Vogel, and Simmons; and that said State, in pursuance of said act, delivered and returned said road to Allen's grantee, the Southeast Railroad Company, and thereby not only confirmed said sale to McKay, Vogel, and Simmons, but dealt with, disposed of, and placed the entire subject matter of this suit beyond the reach of the court. After the filing of the amended answer, the cause was dismissed as to Allen.

These two pleas went in bar of the entire action, and, if they were good, ended the whole controversy. The counsel for the plaintiff interposed a demurrer to them, which demurrer was, by the court, overruled, and judgment was thereupon given for defendants. Plaintiff excepted, and now brings the case here by writ of error. It is admitted that the act of the Legislature confirming the road to Allen is a complete bar to all that part of the petition which demands a rescission or cancellation, or reconveyance to the State. The road is now vested in Allen's grantee by authority of law, and whatever disposition may be made, or view taken, of the other questions presented by the record, neither the road, its title, nor franchises, can be molested by the court. They have passed beyond its jurisdiction by an enactment of the law-making power.

The position has been taken that, as a part of the bill has become nugatory by the Legislature withdrawing the *res* or subject matter from the cognizance of the court, the whole proceeding must fall, and that there is nothing on which jurisdiction can attach. But this is not correct. When a court of equity once acquires jurisdiction of a cause, it will retain it to do full and complete justice. It will sometimes give damages which are generally only recoverable at law, in lieu of equitable relief, where it has obtained jurisdiction on other grounds. And so,

too, it will afford such relief as the altered situation of the parties or the subject matter requires, if sufficient remains to warrant equitable interference. (Holland v. Anderson, 38 Mo. 55; Wiswell v. McGown, 2 Barb. 270.)

The jurisdiction was clear and undoubted at the inception of the suit, and, notwithstanding the change that has been made, it will be retained and justice administered as to the remaining portion, unless the whole cause is concluded by the matters pleaded in bar.

And first it is insisted that the governor had no right to seize the road, unless there had been a transfer or sale in pursuance of the act authorizing the award and sale by the commissioners; that the seizure was an admission by the State that the sale and transfer were legal, and that it amounted to a direct ratification of the same, and that the State having taken the remedy in her own hands, she is estopped from all further proceedings. This argument, to say the least of it, is ingenious and plausible, and might be entitled to some weight were it conceded that the governor was the State. But this broad proposition is not maintainable. In some of the despotic governments of the old world the king or ruler may concentrate all power, and constitute essentially and emphatically the state; but in our republican forms of government this doctrine has never prevailed, and the governor or executive is simply the agent of the people, with powers and duties prescribed, defined, and limited by law. Whenever he acts in his executive sphere as such, in the mode pointed out by the constitution, and according to powers delegated by that instrument, his action may be binding, and he will not be personally amenable in the courts. But for abuse, a remedy must be sought elsewhere. In the sale of the roads, the governor was not acting in his political or executive capacity; he was not carrying out any of the powers delegated by the constitution; he was simply acting as a special agent, in obedience to power committed to him by an act of the Legislature, who saw proper to intrust him with the particular function, but they might have devolved the duty upon any other person as well. That the power was given him to seize the road in a certain contingency, and proceed as for

a forfeiture, is true; and every presumption ought to be indulged in favor of the correctness of his action, as he was invested with authority to proceed upon information peculiarly within his knowledge; but if he proceeded beside the law, or outside of the law, the State would not be bound by his tortious acts or trespasses; and the Legislature seems to have been of this opinion, for, in the confirmatory act, by which the road was re-delivered to Allen and his grantees, we find this provision: "The acceptance of possession of this road under this act and the provisions of this act shall be held to operate in bar of all demands for damages against the State, and any officer or agent thereof, on account of the seizure of the road by the governor." The road was accepted on these express terms, and the acceptance was, consequently, a waiver of the whole question.

But if the reseizure was in all respects legal and regular, the ground taken that it would operate as an affirmance of the sale, and preclude and estop the State from proceeding further, cannot be maintained. The authorities cited by the very able and learned counsel for the defendants do not sustain them. The best-considered case among them is Leonard v. Morgan, 6 Gray, 412. That was an action on contract, by the assignee of one Warren, to recover back money paid by Warren for the purchase of the American House, in Springfield. Warren went into possession under his contract, and made leases of the estate, and paid the first four installments, and demanded a conveyance of the estate, which the defendants refused to make, claiming one year's interest on the installment which was due and payable before Warren could demand a conveyance. Warren did not pay or offer to pay the interest, and denied that the same was due. He afterward paid another installment of the purchase money, and continued in possession of the premises. The defendants subsequently ousted him, and took and retained possession, claiming the right to do so for their own security. Warren, and the plaintiff as his assignee, contended that the defendants' refusal to convey, and taking and retaining possession, and ouster of Warren's tenants, were acts inconsistent with the rights secured to Warren by the contract, and authorized him to consider the contract as rescinded; and the

plaintiff, in affirmance of such rescission, brought his action. The court held that the action would not lie; that the plaintiff should have strictly complied with his contract, and done whatever of duty devolved on him, and then, for a breach of contract by the defendants, a court of equity would have afforded appropriate relief. (Hunt v. Silk, 5 East. 449; 2 Pars. Cont. 492, note.)

I am unable to see how this case, or indeed any to which reference has been made, can help the defendants in the cause at bar. The seizure was made on account of non-compliance with the terms of the contract, for the purpose of foreclosing the State's lien or mortgage. (Adj. Sess. Acts 1866, p. 114, § 14.) It was the institution of the remedy, reserved by the vendor, not distinguishable in principle from a clause of re-entry by a landlord for condition broken, and deprived the plaintiff of no previous existing right. The court, therefore, erred as to this point.

The next question necessary to be determined is, whether the act of the Legislature granting and confirming the road to Allen and his grantee divested the court of jurisdiction and operated as a dismissal of the suit. That such was not the intention of the Legislature is obvious, for the third section of the act expressly provides that "nothing in this and the preceding sections shall be so construed as to prevent the State of Missouri from instituting any proceeding or prosecuting any suit now pending against any person or persons connected with the sale of said St. Louis & Iron Mountain Railroad and the Cairo & Fulton Railroad to A. J. McKay, John C. Vogel, and Samuel Simmons, for the recovery of any moneys of which the State may have been defrauded by said sale, or in any transaction connected therewith: *provided*, said proceedings shall in no wise affect the title of said Thomas Allen to said roads." This language is clear and explicit; there is no room left for construction; the expression is unmistakable, and the object can only be defeated by showing that it is a saving or reservation repugnant to the preceding grant confirming the road to Allen and his grantees. It would require extraordinary astuteness and acumen to discover any such inconsistency or repugnancy. The act simply concedes to Allen the road, confirms the title to him, and puts him in that possession of which he had

been deprived by the seizure. It is a bar as to him, prevents rescission, and effectually extinguishes this suit so far as the restoration of the subject matter is concerned. But it does not prohibit the State from prosecuting her claim for the recovery of whatever she may have lost through the fraudulent acts, contrivances, and confederations of faithless agents.

No rule of law is better settled than that an agent cannot be both buyer and seller, nor will he be permitted to speculate upon the funds or other subject matter confided to his care by the principal.

Thus, in Jacques *et al.* v. Edgell *et al.*, 40 Mo. 77, the plaintiffs delivered to the defendants a lot of pork to be sold for them at a certain commission ; the defendants sold the pork at New Orleans, for the sum of $29,361.57 ; but with the money arising from the proceeds of the sale of the pork, the defendants purchased at New Orleans certain drafts on New York at a discount, and afterward sold them at St. Louis for a premium. The defendants realized on said drafts the sum of $2,209. They accounted for the sum for which they sold the pork, but failed to account for the profits made by reason of their purchase of the drafts, and this court held them liable, upon the principle that where an agent acts for an agreed salary or compensation he will be bound by the agreement ; and where there is no positive or express contract, a reasonable compensation will be implied, but in neither case will he be allowed to retain profits incidentally obtained in the execution of his duty.

The principal is, in general, entitled not only to the bare amount of what has been received by his agent, but also to all the increase which has been made to his property ; and, therefore, when a person is either actually or constructively an agent for other persons, all profits and advantages made by him in the business beyond his ordinary compensation are for the benefit of his employers. (Dunlap's Pal. Ag. 49 ; Sto. Ag. § 211.) The law immediately converts the agent into a trustee for the amount thus wrongfully obtained, and will not allow him, while transacting the business of his principal or *cestui que trust*, to derive a private benefit, to the injury of the person for whom he acts. (Boardman v. Florez, 37 Mo. 559.)

Chancellor Walworth says that it is a rule of equity of universal application, that no person can be permitted to purchase an interest in property where he has a duty to perform which is inconsistent with the character of purchasers. (Perry v. Bank. of New Orleans, 9 Paige, 663 ; Van Epps v. Van Epps, *id.* 237–41.) The Supreme Court of the United States, after a most full and elaborate review of the authorities, has declared that the disability is a consequence of that relation which imposes on one a duty to protect the interests of the other, from the faithful discharge of which duty his own personal interest may withdraw him. In this conflict of interest the law wisely interferes. (Michoud *et al.* v. Girod *et al.*, 4 How. 252.)

In the celebrated case of Davone v. Fanning, 2 Johns. Ch. 252, it was held that if a trustee, or person acting for others, sells the trust estate and becomes himself interested in the purchase, the *cestui que trusts* are entitled, as of course, to have the purchase set aside. Chancellor Kent, in one of his most admired judgments, examined the whole question, and said: " That the danger of temptation does, out of the mere necessity of the case, work a disqualification ; nothing less than incapacity being able to shut the door against the temptation, where the danger is imminent and the security against discovery great; that the wise policy of the law, had, therefore, put the sting of disability into the temptation, as a defensive weapon against the strength of the danger which lies in the situation ; that the parts which the buyer and seller have to act stand in direct opposition to each other in point of interest ; and this conflict of interest is the rock for shunning which the disability has obtained its force, by making the person who has the one part intrusted to him incapable of acting on the other side."

Now, it is perfectly true that individuals have the right to combine their means and capital for the purpose of purchasing, and if they resort to no unfairness, or are not privy to any breach of trust, the transaction will be legal, and they will not be guilty of any moral turpitude. But connivance or collusion on the part of third persons with agents or trustees, the object of which is to induce a betrayal of trust, in order that the confederating

parties may reap an advantage, cannot be allowed, and whatever the parties may have obtained by the illegal transaction, they will be responsible for to the defrauded principal.

If the commissioners, Watt and Farrar, combined and confederated, as charged, with other persons, in the purchase of the property, the plaintiff, of course, will be entitled to whatever speculation they made out of the sale ; and the other persons, by entering into the league with full knowledge of the facts, will also be amenable. The only matter of controversy on a retrial will be as to who is entitled to the $275,000 in money, the amount which the parties received as an advance on the sale to Allen, and the $100,000 in paid-up stock. Both parties must be heard on the facts. The State has the right to show that her interests have suffered and her rights have been impaired through the wrong of those to whom she committed the trust ; on the other hand, the defendants will have the opportunity of showing that the transaction was fair and honest, and that their character has been unjustly aspersed.

The judgment will be reversed and the cause remanded, to be proceeded with in conformity to this opinion. The other judges concur.