## Case No. 14,145.

### TRASK v. MAGUIRE.

[2 Dill. 183, note.] 1

Circuit Court, E. D. Missouri. 1873.

RAILROAD COMPANIES—STATE AID—FORECLOSURE SALE—EXEMPTION FROM TAXATION—ENJOINING COLLECTION.

[1. Where a railroad company which was exempt by charter from taxation had been aided by the state, and was purchased by the state under foreclosure proceedings, and afterwards sold to other parties, who organized a corporation of the same name, *held*, that the right to exemption from taxation did not pass to the latter company, the state having, in the meantime, adopted a new constitution, which prohibited it from thereafter exempting private property from taxation.

[Cited in Atlantic & P. R. Co. v. Cleino, Case No. 631; Bailey v. Atlantic & P. R. Co., Id. 732.]

[2. The fact that a tax on part of the property of a railroad company is admittedly illegal does not authorize the court to enjoin the collection thereof, where enforcement is sought by a sale of personal property only.]

[Cited in Power v. Kindschi, 58 Wis. 542, 17 N. W. 691.]

This was a bill by Spencer Trask against Constantine Maguire, the St. Louis and Iron Mountain Railroad Company, Thomas Allen, and others, for an injunction to restrain the state collector from selling certain engines, etc., seized to satisfy the tax. The court refused to interfere, and an appeal, which is yet pending, was taken to the supreme court of the United States. No opinion was written, but the following memorandum of the conclusions of the court was made at the time.

Mr. Rombauer, for collector.

Dryden & Dryden, for Iron Mountain Railroad Co.

[Before DILLON, Circuit Judge, and TREAT and KREKEL, District Judges.]

DILLON, Circuit Judge. Conceding, but not deciding, that under the act of March 3, 1851 [Laws Mo. 1851, p. 479], incorporating the St. Louis & Iron Mountain Railroad Company, as amended, February 17, 1853 [Laws

1 [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

1853, p. 296], whereby the "stock" (defined by the statute to include the property of the road) "of the said company was declared to be exempt from all state and county taxes" constituted in favor of the said company an irrepealable legislative contract, exempting its property from taxation by the state, or under its authority, we are of opinion that this exemption or immunity from taxation is not possessed by the present corporation known by the same name.

The state aided the original corporation by the issue of its bonds, reserving a statutory lien or mortgage upon "the road of the company and every part and section thereof, and its appurtenances." See Murdock v. Woodson [Case No. 9,442]. This lien or mortgage did not embrace the franchise of the road to be a corporation, and the mortgage was not foreclosed until after the present constitution of Missouri went into operation. The lien of the state was foreclosed under the act of February 19, 1866, and the state itself became the purchaser in September, 1866, and subsequently (November 8, 1866) sold the road to McKay and others, who afterwards (January, 1867) sold the same to Allen. Pursuant to the act of March 20, 1866, authorizing purchasers of railroads from the state to incorporate, Allen and others incorporated themselves and adopted the name of the old company. Allen assigned all his right to the new corporation, and the title of Allen and the new company was confirmed by the act of March 17, 1868 [Laws 1868, p. 95]. State v. McKay, 43 Mo. 599.

Although the state, by legislative act passed after the adoption of the present constitution, undertook to declare that whoever purchased said roads from the state should have all the rights, franchises, and immunities, which were had and enjoyed by the companies for whose default the road was sold (Act Feb. 19, 1866, § 9, known as the "Sell-Out Act"); yet we are of opinion that the state could acquire by its purchase at the foreclosure sale no greater rights and interests than such as were mortgaged to it by the companies, and this did not embrace the corporate franchises of the roads except so far as were necessary and reasonable in order that the purchaser might enjoy the benefits and advantages of his purchase. The right to hold the property exempt from taxation by the state was not acquired by its purchase at the sale, and thus such right did not pass to the state to be held by it without merger or extinguishment. And under the new constitution of the state, which went into effect July 4, 1865, the state was expressly prohibited from thereafter exempting private property from taxation. Const. art. 11, § 16.

Although the tax upon a portion of the property of the company is admitted to be illegal, yet as it is sought to be enforced only by a sale of personal property there is no ground for equitable interference, at the instance of the company, by injunction. Dows

v. Chicago, 11 Wall. [78 U. S.] 108; Susquehanna Bank v. Board of Sup'rs of Broome Co., 25 N. Y. 312; State v. Dulle (Sup. Ct. Mo.; 1871) 48 Mo. 282; Dill. Mun. Corp. § 738, and cases cited; Union Pac. R. Co. v. Lincoln Co. [Case No. 14,379].

[See 18 Wall. (85 U. S.) 391.]