The Chief Justice
delivered the opinion of the Court:
The plaintiffs sued Mayer & Rohr, retail merchants in Washington, on an account and recovered judgment. They then issued an attachment, and had it served on the defendant, as garnishee, with three interrogatories, the first two being questions usually asked garnishees, namely, whether the party served had property, money's, or credits of defendants, or knew of any such, and the third being a special question, asking him what moneys, if any, he held under a certain deed of assignment from the judgment defendants, dated December 27, 1887, which plaintiffs claimed was fraudulent and void. The garnishee answered the first two interrogatories in the negative, and the third by stating he still held some $6,300 as trustee under the said deed.
The plaintiffs joined issue on the answer to the first and second questions, but admitted the answer to the third.
On the trial of these issues in the Circuit. Court, after the evidence of the parties had been submitted to the jury, the justice presiding held as matter of law, that there was not *186 sufficient evidence to authorize the case to be submitted to the jury and directed a verdict for the defendant.
The evidence is set out in the bill of exceptions. Counsel for plaintiff maintained that there was sufficient evidence of fraud to justify a verdict for the plaintiff, or at least to require the submission of the case to the jury, and secondly, that it was unnecessary that the plaintiff should prove that the assignee had any knowledge whatever of any fraudulent purpose on the part of the assignor. The discussion of counsel chiefly relates to the second proposition as one of law, whether or not it is necessary in cases of this character that the assignee should have a knowledge of the fraudulent purpose and intent .of the assignor before a recovery can be had by the plaintiff who sues to set aside the assignment for fraud, and to convert the proceeds of the estate to the payment of his particular debt.
We think that the decision of the second proposition is unnecessary, because clearly if the proof is not sufficient to justify a verdict for the plaintiff on account of fraud on the part of the assignor; or in other words, if the plaintiff has failed to prove a fraud to have been committed by the assignor in making the assignment, by such evidence as would justify a verdict, then there was no error in the action of the Circuit Court in taking the case from the jury, and in the view which we take of this case, it is readily disposed of upon that ground.
In this assignment a preference is given for the sum of $2,500 to one Rose, who was the father-in-law of Rohr, one of the parties, and who it is claimed was not the creditor of the firm, but was the mere surety of Rohr to a party in the city of New York, from whom Rohr at the time of the formation of this partnership, in February, 1885, borrowed the sum of $10,000, and that while the firm had executed a note to Rose to indemnify him for having become the surety of Rohr for the sum of $10,000 ; that this in no manner constituted Rose the creditor of the firm ; that so far as he had any relation to either of the parties, either Rohr or the firm, he clearly was the creditor not of the firm, but of Rohr, and only *187 entitled to the. rights of a creditor of the latter by reason of his being surety for him to the party from whom Rohr had borrowed the money.
It is admitted by counsel for plaintiffs that even conceding that Rohr and not the firm was the debtor, and that the firm had no right whatever to prefer Rose because of the fact that he was the creditor of Rohr and not of the firm, yet, that does not constitute a case where fraud would be inferred; that it does not alone and by itself make the assignment fraudulent.
It is worthy of remark that from the evidence it can hardly be inferred that there was any actual fraudulent intent on the part of either partner in making the preference to Rose. It would seem at most to be only a mistake as to legal right which, if so, would not be a ground for impeaching the assignment in this action, but would be corrected in a proper case.
And so in relation to the circumstance that these parties, very shortly prior to the execution of the deed of assignment, took out of the firm quite a sum of money and appropriated it to their own use. It is conceded by counsel for plaintiff that this is not such a fraud as would make the deed of assignment for that reason fraudulent, but it is claimed to be a circumstance which the jury should have been allowed to look at for the purpose of inferring fraud in connection with other circumstances connected with this assignment.
• We think the position of counsel for the plaintiffs as to these propositions may be conceded, that this was evidence and could not when it was offered properly be ruled out as irrelevant or immaterial; that these circumstances were not to be considered separately, but -were to be viewed in connection with all .the testimony in the case; and upon that sort of consideration the court was to determine whether or not there was sufficient evidence before the jury to justify a verdict. If in the judgment of the court, if the jury should for any reason find for the plaintiff, it would become the duty of the court to set aside thát verdict on a motion, for a new trial, *188 the court would be perfectly justified in withdrawing the case from the jury.
Without examining the evidence in detail we will refer to it somewhat generally. This partnership was formed in February, 1885. At that time money was borrowed by each of the partners through the aid of their relatives respectively. It appears, so far as we know, that the business was conducted regularly until the 1st of July, 1887, when an account of stock was taken, and it is shown that the stock had become reduced from $20,000 to $12,000, and that there was then an indebtedness of the firm shown of an amount more than equal to the capital stock.
It is also shown that for three or four months prior to making the assignment on the 24th of December, 1887, the firm made large purchases of goods, and this, it is claimed, is a circumstance which the jury were entitled to consider for the purpose of inferring fraud.
Now, in looking at the other evidence in the case, which we must not lose sight of in determining the question whether or not the Court erred in reaching its conclusion, we find this is a circumstance (which is clearly competent when the real question is, as in this case, whether the debtor purchased the goods creating the debt upon which the plaintiff’s judgment was rendered, with the intention not to pay for them but to appropriate them or the proceeds thereof, or through the instrumentality of an assignment to the payment of the claims of. more favored antecedent creditors) to wit, that there is no . evidence that Mayer & Rohr ever contemplated an assignment up to about the latter part of the- month of November, and then they consulted a prominent business man,- Mr. Saks, who ultimately became the assignee, and he advised them to consult their counsel. They did so. They consulted the firm of Edwards & Barnard, according to the undisputed evidence, laying before them all the facts of the entire situation as it was at that time. It is shown by the testimony of not only Mayer & Rohr but by that of Saks, Evans and Edwards, that at that time Mr. Edwards advised the firm not to make an *189 assignment; that their situation was not such as demanded of them to do so; that there was a strong probability that they might be able to weather the storm, and avoid an assignment.
Thereupon they proceeded with their, business. A short time after this they became aware that they were in further trouble. Some of their creditors were threatening attachments; and they again consulted Mr. Edwards, who upon full investigation a second time, advised them it was then proper to 'make an assignment. The assignment was executed on the day following this consultation.
It appears that perhaps bn the very morning before they executed the assignment, they withdrew quite an amount of money from the firm, one of them some' $3,000, and one a little less than $1,000. Now, that the withdrawing of the money at this time was a fraudulent transaction on the part of the firm, there can be no doubt; that the creditors would be entitled to resort to legal remedies for the purpose of bringing this money back into the hands of the assignee to be administered as a part of their assets, there can be no doubt. But that it does necessarily prove that the-assignment itself is fraudulent, we think does not follow. It is a fraud on the assignment, but not a fraud in the assignment, as was very well remarked by one of the counsel in argument.
We think that the assignment must be fraudulent, and that the fact of withdrawing this money does not make it an assignment which could be held to be fraudulent as matter of law; nor is it a fact which necessarily tends to prove that the assignment is fraudulent.
It was done in accordance with the advice of reputable counsel, and under the facts and circumstances of the situation, beyond all question, they should have made an assignment at that time. If they did not do that to the full extent that honesty and good faith and the law would require of them, nevertheless, to the extent to which they did follow the law and give up for the use of their creditors their assets, they were doing an honest and proper thing.
*190 Upon this point we refer to a few authorities which, with many others, sustain this position. Emerson vs. Senter, 118 U. S., 1; Estes vs. Gunter, 122 U. S., 450; Burrill on Assignments, Sec. 117; Pinneo vs. Hart, 37 Mo., 561; Macintosh vs. Corner, 33 Md., 607; Henderson vs. Pierce, 108 Ind., 462.
It may be that the circumstances to which we have alluded as having been such as the counsel for plaintiff, in argument claimed, indicated fraud, and were proper matters to be left to the jury for their verdict, might altogether raise such a presumption of fraud as in the absence of explanation or opposing testimony would justify the jury in finding a verdict for the plaintiff, but when considered in connection with all the circumstances in the case, as shown by all the evidence, they are not of such significance and weight as. would justify a jury in finding a verdict for the plaintiff, and we think there was no error on the part of the Circuit Court in withdrawing the evidence from the jury and directing a verdict for the defendant.

The judgment is affirmed.