SCHOOL DISTRICT NUMBER ONE, Appellant, v. ANDREW J. HOLT.

Division Two, March 15, 1910.

1. **SPECIFIC PERFORMANCE: Statute of Frauds: Fraud of Objector: Status Quo.** The Statute of Frauds will not avail as a defense to the specific performance of a verbal contract to convey land, where a refusal of the court to enforce the contract would enable the defendant to work a fraud upon plaintiff. The true basis for the specific enforcement of a contract is that, unless enforced, the result would operate a fraud upon the party seeking enforcement, it being impossible to restore him to his *status quo*.

2. ———: ———: ———: ———: **Schoolhouse Site: Exchange of Land.** It was agreed between defendant and the school district that it would exchange him its old schoolhouse site for another, consisting of one acre at the southwest corner

of his quarter section, and he was put in possession of the old
site. He was a director of the school district and president of
the board, and was selected by the board to superintend the
work of constructing a new house on the new site, and did so,
and pointed out to the workmen where the house was to be
located. Afterwards it was discovered that the house was not
within the limits of the acre, but a little north thereof, and then
it was agreed by him and the district at an annual school meet-
ing, as shown by the minutes, that he would convey an acre en-
compassing the house, the metes and bounds being stated, in
consideration of the old site. *Held*, that it would be aiding him
to work a fraud upon the district to uphold his plea of the
Statute of Frauds to this last agreement, since it is impossible
for him to restore the district to its *status quo*. And whatever
mistake was made in carrying out the first valid agreement was
due to his own wrongful act in marking out the school site,
and the last agreement, which is not wholly executory, but in
part executed by what preceded it, will be specifically enforced.

Appeal from Nodaway Circuit Court.—*Hon. William
C. Ellison,* Judge.

REVERSED AND REMANDED (*with directions*).

*Anthony & Ford* for appellant.

(1) The contract is fully performed and is there-
fore taken out of the statute. Farrar v. Patton, 20
Mo. 81; Bless v. Jenkins, 129 Mo. 647. (2) The dis-
trict took possession of the site sued for, and this pos-
session was taken in pursuance of the contract sued
on. School District v. Holmes, 53 Mo. App. 487. Tak-
ing possession is sufficient part-performance. Young
v. Montgomery, 28 Mo. 604. (3) The old site could
not be abandoned until a new one was acquired. R. S.
1899, sec. 9852. (4) The board could not change the
site. Siebert v. Botts, 57 Mo. 430. (5) The court
erred in dismissing plaintiff's bill. Some relief should
have been granted. McDaniel v. Lee, 37 Mo. 207;
Savings Institution v. Collonius, 63 Mo. 295.

*L. C. Cook* for respondent.

(1) The agreement sought to be enforced was for the sale of land. It was not in writing, and no memorandum thereof was ever signed by Holt, the person to be charged therewith, or by any other person for him. It is, therefore, clearly within the Statute of Frauds. R. S. 1899, sec. 3418. (2) Plaintiff district has no record of the agreement, and it is conceded that whatever agreement was made, was between the individual members of the board and the defendant. A school district is a quasi corporation, and the powers of its directors are limited by statute. Buchanan v. School Dist., 25 Mo. App. 85. The procedure necessary to change a schoolhouse site, is fixed by statute, and is vested in the annual meeting, after certain things, mentioned in the statute, are done. R. S. 1899, sec. 9755. It is thus clearly seen that the board of directors had no power to make the agreement, even in a board meeting. How then can it be said that the individual members, acting separately, had such authority? It is not contended that the matter was ever discussed at a meeting of the board, or that a meeting was ever held. State ex rel. v. Lockett, 54 Mo. App. 202. (3) There was no legal proof of any agreement, for the "action of a school board can only be shown by the record which the statute requires the clerk to keep." (4) The agreement, even though made, was without consideration. (5) There is not a word of testimony in this record, of a single act or deed, on the part of any party, even squinting at any attempted performance.

BURGESS, J.—This is a suit to enforce specific performance of a verbal contract between plaintiff and defendant for the purchase by plaintiff of a schoolhouse site, the consideration to be the conveyance to the defendant of the old schoolhouse site of said school district.

In its petition plaintiff alleges that in December, 1857, Solomon Schell conveyed to Nodaway county, Missouri, certain land to be held in trust by said county for the use and benefit of the plaintiff district, which land was described in the deed of conveyance as follows: Beginning at a point twenty rods north, and nineteen rods east, of the southwest corner of section 5, township 64, range 36, Nodaway county, Missouri, and running north sixteen rods; thence east ten rods; thence south sixteen rods; thence west ten rods, to the point of beginning, and containing one acre. That this land was occupied by plaintiff from 1857 to 1899, and used as a school site. That it was agreed by and between plaintiff and defendant that plaintiff's buildings should be removed to another site which defendant was to convey to plaintiff, and in consideration whereof plaintiff was to convey to defendant the land described above. That in 1899, in accordance with said agreement, plaintiff removed its schoolhouse and other buildings from the land formerly occupied by it, and erected new buildings on what was supposed to be the land which defendant had agreed to convey to plaintiff, but that it was afterwards discovered that, by mistake, said schoolhouse was not located on the land intended. That defendant offered, and plaintiff, at its annual meeting, held on the 5th day of April, 1904, accepted—more than two-thirds voting therefor —a proposition which, in substance, was as follows: Plaintiff agreed to convey to defendant the land held by the county for its use and benefit, and which is described above, and in consideration thereof defendant agreed to convey to plaintiff the land on which its schoolhouse is situated, and which it has occupied since the year 1899, and is still occupying, and which is described as follows, to-wit: "Beginning at a point seventeen rods north, and twenty feet east, of the southwest corner of section 5, township 64, range 36, Nodaway county, and running thence east ten rods; thence

north sixteen rods; thence west ten rods; thence south sixteen rods, to the point of beginning, and containing one acre.''

The petition then alleges that the land formerly owned and occupied by plaintiff is now in possession of the defendant, and that plaintiff has tendered and still tenders him a deed for the same. It further alleges that plaintiff has fully performed its part of said agreement, and that defendant refuses to comply with his part thereof. Plaintiff prays for judgment compelling the defendant to convey to plaintiff the land last described, and, upon his failing to execute said conveyance, that he be divested of all right, title and interest in and to the same, and that plaintiff be vested of the title thereto, and for all further and proper relief.

Defendant, in his answer to the petition, admits that, in the year 1899, he and plaintiff entered into a verbal contract, but avers that by the terms of said contract plaintiff was to convey to him the school site described in the petition, consisting of one acre, then occupied by it and that in consideration therefor he, the defendant, was to convey to plaintiff ''one'' acre of land in the southwest corner of said section 5, the same to be owned and used by plaintiff as a school site. Defendant further avers that the terms and conditions of the contract between him and the plaintiff have been fully performed by both except as to the delivery of deeds; that plaintiff removed its school building from said original site to the site so acquired, and that defendant took possession of the said original site; that he has at all times been ready and willing to give plaintiff a warranty deed for said acre of land in the southwest corner of section 5, and that he tendered such deed to plaintiff before suit, but that plaintiff refused to accept the same, and that he now tenders the same in court. Further answering, he denies that he ever at any time offered to plaintiff

the proposition set forth in the petition, and says that "the agreement, even if made as recited in plaintiff's petition, is within the Statute of Frauds, and void."

The main facts, as developed at the trial, are as follows:

In 1899, the plaintiff school district was the owner, and in possession, of a certain acre of land situated about twenty rods north of the south line, and nineteen rods east of the west line, of section 5, township 64, range 36, in Nodaway county, Missouri, and had a schoolhouse and other necessary buildings thereon, and was using the same for school purposes. Said acre was, in 1857, conveyed by one Solomon Schell to Nodaway county for the use and benefit of the plaintiff school district, the same to be used as a school site. The defendant, Holt, was the owner of the lands surrounding said school site, so that ingress into and egress from the schoolhouse was had by passing over his land. In the spring of 1899 it was determined by plaintiff's board of directors and the defendant that it would be advantageous to both parties to exchange said school site for one at the southwest corner of said section 5, bordered by two roads, one running north and south, and the other east and west. According to the testimony of two of plaintiff's directors, the new site agreed upon, to contain one acre, "was to be ten rods wide, east and west, by sixteen rods long, north and south, exclusive of the road." The agreement was verbal, and no record was ever made of same. The proposition was submitted to the district, at its annual meeting held April 4, 1899, a record of the minutes of which was introduced in evidence. It contained the following entries: "It was voted to change the schoolhouse site; twelve votes for change, and none against it. It was also voted to make a loan of $300 for erecting new schoolhouse; twelve votes for loan, and none against it." At the same meeting, as shown by the minutes, the defendant was elected

a member of the board of directors and he was subsequently chosen president of the board. Thereafter, the defendant and other members of the board measured off an acre of ground, for the new site, beginning at or near the southwest corner of said section 5, and set stakes a rod or so south of the north line of said acre to designate the exact place where the new schoolhouse was to be erected. Mr. Holt was afterwards selected by the board to superintend the work of erecting the new schoolhouse and other necessary buildings, and he did superintend the work, and pointed out to the workmen the spot where the schoolhouse was to be located. The buildings were erected, and Holt was asked to execute a deed to the acre in exchange for a deed to the old school site. His answer was, "When I get ready I will make a deed, and not before." Several times thereafter he was called upon by members of the board to make out a deed to the property, but always refused, usually giving some contemptuous answer. In 1903 he was again called on by the directors for an exchange of deeds, when it was proposed by defendant that they go and measure the land. This was done, and it was then discovered that the school and outhouses were not located as originally intended, but were two or three rods farther north, and on the land of the defendant. The latter, then, after considerable wrangling, agreed to give the district an acre of land the bounds of which would encompass the school and outhouses as then situated, and the same was measured off for the new site. The proposition was submitted at the annual meeting of the district held in April, 1904, a record of the minutes of which was introduced in evidence, and showed the following: "Also voted to change site of said district from original site to one described as follows: "Beginning at a point seventeen rods north of the corner stone on the southwest corner of section 5, township 64, range 36; running thence east eleven rods,

three and one-half feet; thence north sixteen rods; thence west eleven rods, three and one-half feet; thence south sixteen rods to the place of beginning, containing one acre, exclusive of road.' '' Noah Duncan, who was clerk at the time of the special meeting, and who prepared the notices therefor, testified that he showed Holt the notice which described the land sued for, and that he, Holt, said "it was all right." Two members of the board of directors testified that the defendant agreed to give the district the acre described in the petition in exchange for the old school site. The defendant, however, testified that he never agreed to give said acre, but that his proposition merely was to give the district "160 square rods in the southwest corner of section 5 for the old acre." The board of directors, according to the evidence, demanded a deed from the defendant to the acre described in the petition, and tendered him a deed to the original site, but the defendant refused to give the district a deed, saying he had changed his mind, and that the board had better take an acre down in the corner. Subsequently the defendant went upon the land, and moved the coalhouse and other outhouses over near the west line of said section 5, and nearer the schoolhouse than before, and then fenced off an acre of land, encompassing the school and outhouses, which acre so fenced off by him was longer and narrower than that for which the plaintiff seeks a conveyance.

No writing or memorandum was ever made of said agreement between the plaintiff and defendant. The defendant has been in possession of the original schoolhouse site, described in the petition, since the removal of the school buildings therefrom, in 1899, and the plaintiff has been in possession of the school buildings, and using the same for school purposes, since their erection.

The court's findings, with relation to the first verbal agreement, and the mistake made in the loca-

tion of the school buildings, accord with the allegations of the petition and the facts above set forth. As to the second verbal agreement, the court says:

"The court finds the evidence to be that said Holt and said school district entered into a new verbal agreement by which the said Holt, in consideration of the old schoolhouse site aforesaid, was to convey to the said school district an acre of land in the southwest corner of said section, having for its beginning point a place on the west line of said section, three or four rods north of the southwest corner; thence running north sixteen rods; thence east ten rods; thence south sixteen rods; thence west, to the place of beginning, or substantially that description.

"The court further finds that, by this second verbal agreement, the acre included would encompass the schoolhouse and outbuildings, as located under the old verbal agreement.

"The court further finds that, under this second verbal agreement, there was no act done by any of the parties; no money passed; no deeds were exchanged; that the contract was verbal, no part of it being evidenced by writing.

"Upon these facts, the court holds, as a matter of law, that the plaintiff school district cannot have specific performance of that second verbal agreement, because of the fact, which the court has found, that neither party had in any manner executed any portion of the contract, and no part of the consideration had been paid."

The court found for the defendant, and dismissed plaintiff's petition. After unavailing motions for a new trial and in arrest of judgment, plaintiff appealed.

The question for decision in this case is whether the court's declaration of law, as applied to the facts, is correct.

There can be no question that, if the school buildings had been erected on the site marked out on the

acre contracted for, the plaintiff would have a right
to a decree; for the contract, then, except as to the
exchange and delivery of deeds, would have been
executed by both parties. The defendant had taken pos-
session of the old school site property, and plaintiff,
except for the mistake of defendant in placing the
school buildings beyond the north line of the acre
contracted for, would have been in full possession of
such acre under said contract.

Now, we think the evidence is strong that, after
it was discovered that the schoolhouse and outbuildings
were not erected within the lines of the acre agreed
upon, the defendant did agree to give plaintiff, in
lieu thereof, the acre described in the petition. This
acre encompassed the school buildings as then situated.
The defendant, after said last verbal agreement had
been entered into, continued in possession of the old
school site, and the plaintiff district has at all times,
since their erection, been in possession of the school
buildings and using same for school purposes. Under
such circumstances, can a court of equity decree spe-
cific performance of the verbal contract last mentioned,
notwithstanding defendant's plea of the Statute of
Frauds?

In Real Estate Savings Inst. v. Callonious, 63
Mo. l. c. 295, it is well said that "when a court of
equity once acquires jurisdiction of a cause, it will not
relax its grasp upon the *res* until it shall have avoided
a multiplicity of suits by doing full, adequate and
complete justice between the parties. It will not con-
tent itself in this regard by any half-way measures;
it will not declare that a party has been defrauded
of his rights, and then dismiss him with a bland per-
mission to assert, at new cost and further delay, those
rights in another forum." The same reasoning is con-
tained in McCoy v. McCoy, 32 Ind. App. 38, wherein
the court says: "One of the highest duties of courts,
and especially courts of equity, is and should be sacred-

ly to guard against fraud, and in case of fraud, to secure to the injured party his legal and equitable rights. The maxim that for every wrong there is a remedy should not be lost sight of in the administration of the law and the application of the principles of equity.''

The defendant himself committed the mistake or wrong which made necessary the changing the boundaries of the new school site, and the bringing of this suit. He was president of the board of directors, and helped measure off the land contemplated in the original contract, and was present when stakes were set to designate the exact spot where the schoolhouse was to be located. But instead of putting the buildings on the land traded for, and on the spot indicated, he put them two or three rods farther north, and on his own land. Can he now come into court and say: ''Had I located the buildings on the site which you marked out, you would have been entitled to the remedy you seek, but having put the buildings in a different place, placed you in possession of the same, and agreed with you to change the boundaries of the site so as to encompass said buildings, yet, under the Statute of Frauds, you have no relief?'' Can he thus take advantage of his own wrong?

As said in Nowack v. Berger, 133 Mo. l. c. 42, ''the true basis of specific performance being enforced is that, unless enforced, it would operate a fraud on the party who seeks its enforcement, it being impossible to restore such party to his *statu quo*. [Browne, Stat. Fr., secs. 448, 487, and cases cited; 2 Story, Eq. Jur., sec. 761, and cases cited.]'' In the same opinion the court quoted with approval the following from Glass v. Hulbert, 102 Mass. 35: ''The fraud most commonly treated as taking an agreement out of the Statute of Frauds is that which consists in setting up the statute against its performance, after the other party has been induced to make expenditures, or a change of situation

in regard to the subject-matter of the agreement, or upon the supposition that it was to be carried into execution, and the assumption of rights thereby to be acquired; so that the refusal to complete the execution of the agreement is not merely a denial of rights which it was intended to confer, but the infliction of an unjust and unconscientious injury and loss.''

In this case it is impossible to restore the plaintiff to its *status quo*, and the refusal of the defendant to complete the execution of the agreement causes injury to, and works a fraud upon, the plaintiff.

The chancellor's refusal to grant the relief prayed for by plaintiff seems to be based upon the theory that the second verbal agreement was an entirely new agreement, and that under it no consideration passed, and no act was done by either party towards the execution of the contract. In other words, the court viewed said contract as being purely executory, and therefore within the Statute of Frauds; but we cannot so regard it. The old parol agreement never was executed, so far as giving the plaintiff possession of the land which the defendant had agreed to give in exchange for the old school site, and the plaintiff's occupancy or possession of the school building, mistakenly located on defendant's land, was merely by consent or sufferance. Not so under the second parol agreement. When the new contract was made, and the land measured off, the plaintiff's possession must be regarded as possession under the new contract, for theretofore it was a mere trespasser on defendant's land, and liable to be dispossessed at any time. The consideration for the new agreement, as for the old, was to be the conveyance to defendant of the old school site, of which latter he continued to hold possession after the second agreement was entered into. If he wished to rescind said agreement, he should at least have offered to restore plaintiff to the possession

226 Sup—27

of the old school site.  He did not do so, nor indeed
did he in any way interfere with plaintiff's enjoyment
of the fruits of the new agreement, and it must be
held that he acquiesced therein.  He now denies that he
made such agreement, and that even if he was a party
thereto, the contract was within the Statute of Frauds
and void.  We hold that plaintiff's possession of the
said acre of ground and defendant's possession of
the old school site are both by virtue of the new
agreement, and that the contract is sufficiently ex-
ecuted to take it out of the Statute of Frauds.

In Moss v. Culver, 64 Pa. St. 414, it is said:
"It is true, as has been often said, there is no dif-
ference between a parol sale and an exchange in re-
gard to the requisites to take it out of the Statute
of Frauds and Perjuries.  A clear, explicit and un-
ambiguous contract, and a taking of possession under
and in pursuance of the contract, are as much re-
quisites of a parol exchange as of a sale.  But there
is a marked difference in the evidence which estab-
lishes the possession.  A sale is confined to a sub-
ject coming from a single side.  It has no relation
to, or dependence on, any other subject.  The evi-
dence of possession taken of it is therefore confined
to a single subject, and if not taken in a reasonable
time, or so as to make it doubtful whether it is at-
tributable to the contract, the parol sale is not taken
out of the statute.  But an exchange necessarily has
a subject on each side which stands related to the
other.  One is the representative of the other, so
much so that the law implies a contract of warranty
by the act of exchanging.  If, therefore, the evidence
shows a clear, unequivocal and complete taking pos-
session of one of the subjects of an exchange by the
party owning the other subject, it strengthens the evi-
dence of a possession taken by the opposite party of
the corresponding subject.  Evidence of possession that
might seem weak and inconclusive in the case of a

parol sale, is thus made clear and convincing in the case of an exchange.''

In Johnston v. Johnston, 6 Watts 370, the court said: ''It is undoubtedly true that an agreement for the exchange of land is within the Statute of Frauds, and must be in writing. [Rice v. Peet, 15 John. 503; Price v. Peel, Co. Lit. 447.] But the specific execution of a parol agreement for an exchange will be decreed in equity when the agreement has been carried into effect in whole or in part.''

In Boggs v. Bodkin, 32 W. Va. 566, a written contract was entered into for the exchange of lands and it was so far executed that each party put the other in possession of the lands exchanged. Afterwards the parties entered into an executory parol contract, annulling the first contract of exchange, and such parol con- tract was put into effect partially by one of the parties restoring to the other the possession of his land. The court enforced such parol contract of rescission thus partially executed.

Having held that the contract in question has, by the acts of the parties, been taken out of the Statute of Frauds, nothing remains to be done save to decree its specific performance, refusal to do which, under the circumstances of the case, would be a denial of justice and contrary to the principles of equity, the agreement being so far executed as to make it impracticable to place the parties in their original position. The defendant cannot be permitted to accept and enjoy the benefits of the contract, and at the same time repudiate its obligations. It is not shown by the evidence that the situation of the defendant is such that the specific enforcement of the contract will be injurious or oppressive as to him, and there can be no doubt that under the contract the defendant could avail himself of the same remedy, and would be entitled to the same relief as prayed for by the plaintiff in this suit.

The judgment is reversed and the cause remanded, with directions to the court below to enter up judgment for the plaintiff in conformity to the prayer of the petition.