**STATE of Missouri ex rel. Craig L. LEONARDI and Craig L. Leonardi, M.D., P.C., Relators,**

v.

**The Honorable Thea A. SHERRY, Judge of the Circuit Court of St. Louis County, Missouri, Respondent.**

No. SC 85520.

Supreme Court of Missouri, En Banc.

July 1, 2004.

Eric M. Trelz, James P. Martin, St. Louis, MO, for Relators.

Ann K. Covington, Lisa Demet Martin, St. Louis, MO, for Respondent.

WILLIAM RAY PRICE, JR., Judge.

### I.

Craig L. Leonardi and Craig L. Leonardi, P.C.,[1] request a writ of prohibition precluding the trial court from exercising jurisdiction under the equitable cleanup doctrine and denying a jury trial as to Leonardi's counterclaim for damages in the underlying case. A preliminary order was issued. The preliminary order is made absolute as modified.

### II.

Pharmaceutical companies contracted with Radiant Research, Inc., to oversee human clinical trials testing new drugs. Radiant and Leonardi, a medical doctor, entered into several clinical trial consulting agreements whereby Leonardi agreed to conduct some of those trials for Radiant. The agreements included restrictive covenants that prohibited Leonardi from conducting further trials for the pharmaceutical companies for one year following the termination of the consulting agreements unless Radiant served as the intermediary.

After notifying Radiant approximately two weeks in advance, Leonardi terminated their relationship in November 2001. Radiant filed a six-count petition against Leonardi in February 2002 seeking injunctive relief and damages on every count. Radiant's claims included breach of contract, anticipatory repudiation, tortious interference with contracts, and civil conspiracy. In its requests for injunctive relief, Radiant sought to enforce restrictive covenants in the consulting agreements.

In response to Radiant's petition, Leonardi filed a four-count counterclaim and asserted multiple affirmative defenses, including laches, estoppel, and unclean hands. He included actions for breach of contract and breach of the implied covenant of good faith and fair dealing. He also requested a declaratory judgment.

Following a hearing in January 2003, the trial court denied Radiant's request for a preliminary injunction. The trial court declined to issue the injunction because it would "not have the necessary effect of reinstating Radiant as the site manager." Furthermore, the order stated, "the impact on the participant/patients, the status of these trials vis a vis The Food and Drug Administration and the public interest in continuing valuable medical research all support" the trial court's decision not to enjoin Leonardi from continuing the trials without Radiant. In conclusion, the order included the following:

> It is well settled that injunctive relief is inappropriate where there appears to be an adequate remedy at law. From the evidence adduced, there is a viable cause of action for breach of contract and that damages are quantifiable and capable of being ascertained, all subject to further evidentiary hearing on the issues of liability and damages.

The trial court entered an order later that month setting the case for trial during a certified jury week.

In February 2003, Leonardi voluntarily dismissed his action for a declaratory judgment. He then filed a motion for a ruling

---

1. The remainder of this opinion refers to Leonardi and his professional corporation collec- tively in the singular as "Leonardi."

on the merits of Radiant's equitable claims. In early March 2003, the trial court heard arguments and received briefs from Radiant and Leonardi discussing the availability of a jury trial and the applicability of the equitable cleanup doctrine.

The trial court issued an order on March 21, 2003, stating that its denial of Radiant's request for a preliminary injunction did not dispose of Radiant's request for a permanent injunction and that Radiant's requests for equitable relief and damages were still before it. The trial court concluded that Leonardi was not entitled to a jury trial because it retained jurisdiction over Radiant's claims pursuant to the equitable cleanup doctrine in that "a court of equity may retain jurisdiction to award damages where equity requires this form of relief in the circumstances."

Following the trial court's denial of a jury trial, Leonardi filed his request for a writ in prohibition. A preliminary order in prohibition was issued instructing the trial court to refrain from all action in the case until further notice. Leonardi argues that the equitable cleanup doctrine is inapplicable under the circumstances and that the trial court violated his constitutional right to a jury.

### III.

The problem of determining whether a jury trial should occur in cases involving claims for both damages and equitable relief is not new, nor is it simple, in Missouri or elsewhere. *See generally, Right in Equity Suit to Jury Trial of Counterclaim Involving Legal Issue,* 17 A.L.R.3d 1321 (William E. Shipley et al. eds., 1968) (overview of how different states have resolved this issue). This Court has addressed the issue, directly and indirectly, on numerous occasions. In its present state, the law in Missouri is inconsistent and confusing. Throughout the precedent, different principles have been repeatedly cited.

Some cases state that "once having acquired jurisdiction equity will retain it, under a prayer for general relief . . . to administer full and complete justice, within the scope of pleadings and evidence, between the parties." *State ex rel. Drey v. Hoester,* 608 S.W.2d 401, 404 (Mo. banc 1980); *see, e.g., Deutsch v. Wolff,* 994 S.W.2d 561, 567 (Mo. banc 1999); *Metro. St. Louis Sewer Dist. v. Zykan,* 495 S.W.2d 643, 658 (Mo.1973); *Townsend v. Maplewood Inv. & Loan Co.,* 351 Mo. 738, 173 S.W.2d 911, 914 (1943); *Seested v. Dickey,* 318 Mo. 192, 300 S.W. 1088, 1101–02 (1927).[2] Similarly phrased is the rule that "when a court of equity once acquires jurisdiction of a cause it will not relax its grasp upon the *res* until it shall have avoided a multiplicity of suits by doing full, adequate and complete justice between the parties." *Real Estate Saving Inst. v. Collonious,* 63 Mo. 290, 295 (1876). Similarly, *Rockhill Tennis Club of Kansas City v. Volker* noted that "a court of equity when unable to grant specific performance of a contract will not dismiss the bill, but will retain jurisdiction and award damages in place of such performance." 331 Mo. 947, 56 S.W.2d 9, 20 (1932).

Another line of cases, however, states that "a court of equity does not have jurisdiction to render a judgment for a plaintiff on legal issues in the absence of a finding that some equitable right of the plaintiff has also been violated," *Krummenacher v. Western Auto Supply Co.,* 358 Mo. 757, 217 S.W.2d 473, 475 (1949), and "where a case for relief in equity fails a court of

---

**2.** These cases, among others, are cited by the dissent for general propositions of equity. The more recent cases from this Court addressing the issue to be resolved here are discussed in this opinion.

equity is without jurisdiction to award other relief by way of disposing of the entire controversy; unless, indeed, it appears that the remedy at law will be inadequate." *Jaycox v. Brune*, 434 S.W.2d 539, 543 (Mo. 1968). Or, "when the [f]acts relied on to sustain the equity jurisdiction fail of establishment" a case will not proceed in equity "because a court of equity does not have jurisdiction to render a judgment for a plaintiff on legal issues in the absence of a finding that some equitable right of the plaintiff has also been violated." *State ex rel. Willman v. Sloan*, 574 S.W.2d 421, 422–23 (Mo. banc 1978). A related concept is that equity may be invoked at the outset only when "there is no adequate remedy at law that can give appropriate relief to a deserving petitioner." Robert H. Dierker, *Contracts, Equity, and Statutory Actions Handbook*, 35 Missouri Practice secs. 23.1, 23.4, 23.7 (2004); *see Becker v. Tower Nat'l Life Inv. Co.*, 406 S.W.2d 553, 559 (Mo. 1966) (plaintiff who failed to demonstrate inadequacy of legal remedy not entitled to specific performance of contract); *Wilkinson v. Tarwater*, 393 S.W.2d 538, 542 (Mo. 1965) (doctrine of equitable lien applies only when "law fails to give relief and justice would suffer" otherwise); *Collins v. Shive*, 261 S.W.2d 58, 60 (Mo.1953) (pleading must demonstrate that legal remedy is inadequate); *Hanson v. Neal*, 215 Mo. 256, 114 S.W. 1073, 1080 (1908) (claim will be heard in equity "where a plain, adequate, and complete remedy cannot be had in the courts of common law").

The Court has reached mixed results in attempting to apply these various principles. For example, in *Rockhill Tennis Club v. Volker*, the plaintiff tennis club sought to exercise an option in its lease and sued for specific performance to compel the defendant city to convey real estate. 56 S.W.2d at 10. Because the land in question was intended to be used by the city for an art gallery, the Court reversed

on public interest grounds the trial court's grant of specific performance but found that the plaintiff was "not, however, to be turned out of court without remedy." *Id.* at 19–20. Noting that it could "deny the relief prayed for and remit plaintiff to an action for damages," the Court remanded and instructed the trial court to refuse specific performance and to hold a new trial, without a jury, solely to determine the plaintiff's damages. *Id.* at 20.

In *Krummenacher v. Western Auto Supply Company*, the plaintiffs filed a one-count petition seeking equitable relief, namely abatement of a nuisance, and damages from that nuisance. 217 S.W.2d at 473. Both types of relief thus relied on the same factual pleadings and proof. The trial court denied the equitable relief but found, without a jury, that the plaintiffs sustained damages and awarded them $500. *Id.* at 475. The plaintiffs did not appeal the denial of equitable relief, but the defendants appealed the judgment. *Id.* at 476. This Court reversed and remanded for a jury to determine damages, holding that "a court of equity does not have jurisdiction to render a judgment for a plaintiff on [claims at law] in the absence of a finding that some equitable right of the plaintiff has been violated." *Id.* at 475. Thus, two trials were necessary to resolve the plaintiffs' claims: the first without a jury and the second with a jury.

In *Burnett v. Johnson*, the plaintiffs asserted a claim for damages to which the defendant responded with equitable affirmative defenses and counterclaims in equity and at law. 349 S.W.2d 19, 20 (Mo. 1961). The trial court ruled that the counterclaims converted the case from one at law to one in equity. *Id.* at 21. The plaintiffs argued that the claim was not in equity but nonetheless proceeded without a jury. *Id.* The trial court heard the plaintiffs' and defendant's evidence and ruled

against the plaintiffs as to their claims, against the defendant as to his equitable claims, but awarded the defendant damages as to his counterclaim at law. *Id.* at 21–22. The trial court then granted the plaintiffs' motion for a new trial and transferred the case to a jury docket. *Id.* at 22. The defendant appealed. *Id.*

Despite agreeing with the trial court that "equitable rights must be both averred and proved before purely legal rights will be determined by a court of equity," this Court reversed. *Id.* at 23. The Court noted that if the equitable claims and defenses were unsuccessful, the claims at law should have been tried before a jury. *Id.* at 22. But, because the plaintiffs introduced evidence and submitted their claims at law to the trial court alone, they waived any right to a jury trial of those claims. *See id.* at 24. Again, had the plaintiffs preserved their claim of error as to their right to a jury trial, two trials would have been required to resolve the parties' claims in this case.

In *Jaycox v. Brune,* the plaintiff sued the administrator of an estate to enforce an oral contract to make a will in his favor and, in the alternative, for the recovery of money for services the plaintiff had rendered to the deceased. 434 S.W.2d at 541. The trial court granted the defendants' motion to dismiss the equitable claim to enforce the oral contract and found in favor of the administrator on the action to recover money. *Id.* The plaintiff appealed. *Id.*

This Court found that the plaintiff's second count, which was for a monetary judgment and involved factual issues, would normally have entitled him to a jury trial. *Id.* at 542. The Court noted that the general rule that "equity, having once become possessed of a cause, will retain it for the purpose of administering full and complete relief, does not apply when the facts

relied on to sustain the equity jurisdiction fail of establishment." *Id.* at 544. The Court consequently held that the dismissal of the plaintiff's first count, for which he was not entitled to a jury, caused the trial court to lose its equitable jurisdiction and the plaintiff's request for a jury trial subsequently should have been granted. *Id.* at 543. The plaintiff was therefore entitled to a second trial wherein a jury would determine his claims. *Id.*

In *Willman v. Beheler,* a medical doctor violated the restrictive covenant in his contract. 499 S.W.2d 770, 777 (Mo.1973) (hereinafter *"Willman I "*). The doctor's former partner, Willman, sued to enforce the covenant and to enjoin the defendant, Beheler, from practicing in violation of the restrictive covenant. *Id.* at 773. By the time the case worked its way to this Court, the five-year restriction on the defendant's practice had nearly expired. *Id.* at 778. The Court concluded that, even though the passage of time had rendered the equitable remedy—a permanent injunction—ineffectual, because "[e]quity will not suffer a wrong to be without a remedy," the "conditions and exigencies of the case" permitted the trial court to proceed in equity despite the knowledge that it would award a "mere money judgment." *Id.* at 778–79. It remanded the case to allow the parties to present evidence as to the damages incurred by the plaintiff as a result of the defendant's violation of the covenant. *Id.*

The case later returned to the Court in an action for a writ of prohibition in *State ex rel. Willman v. Sloan,* 574 S.W.2d 421 (Mo. banc 1978) (hereinafter *"Willman II "*). On remand following *Willman I,* the trial court granted the defendant's request for a jury to determine the plaintiff's damages, and the plaintiff sought a writ in prohibition to prevent the trial court from impaneling a jury for that purpose. *Id.* at

422. The defendant argued that "an action is generally considered legal rather than equitable when the only relief sought is money damages," and "because the only issue on remand [was] whether [the plaintiff] sustained damages due to the breach of the restrictive covenant," the case was "converted into a case in which only the legal issue of damages" remained. *Id.*

The Court reiterated the rule that "[a]lthough damages are usually a legal remedy, a court of equity may decree them where they are the relief necessary in order to do equity." *Id.* (citing *Willman I,* 499 S.W.2d at 778). The Court issued a writ in prohibition to prevent the trial court from impaneling a jury to determine damages in the underlying suit because *Willman I* found that "there was merit to [the plaintiff's] claim, and that he was entitled to enforce the covenant in equity" even though the equitable remedy no longer remained viable because of the passage of time. *Id.* at 423 (citing *Willman I,* 499 S.W.2d at 777).

These cases are difficult, if not impossible, to reconcile. *Jaycox, Burnett,* and *Krummenacher* concluded that if equitable relief was not granted, a second and separate proceeding at law with a jury was required to award money damages. *See Jaycox,* 434 S.W.2d at 543, 547; *Burnett,* 349 S.W.2d at 22; *Krummenacher,* 217 S.W.2d at 476. In *Rockhill Tennis Club, Willman I,* and *Willman II,* the proof of an equitable right appears to have been severed from the granting of equitable relief. The courts in these cases, sitting in equity, were allowed to grant monetary relief although the traditional forms of equitable relief were not justified. One might wonder, then, whether equitable "jurisdiction" is "established" by facts pleaded, defenses asserted, relief requested, facts proved, relief granted, or some ever changing combination of the above. One

might also wonder when a remedy at law would not be adequate and complete after it has been determined that an equitable remedy will not be granted.

This procedural quagmire, however, is not necessary. It does not take into account the consolidation of equitable and legal jurisdiction in our circuit courts. It also fails to give appropriate consideration to the historical preference for trial by jury expressed in Article I, section 22(a) of the Constitution of the State of Missouri.

### IV.

The dichotomy of separate jurisdiction for courts of law and courts of equity evolved in old England. 27A Am.Jur.2d *Equity* sec. 3 (1996); Ellen E. Sward, *A History of the Civil Trial in the United States,* 51 U. Kan. L.Rev. 347, 348–50 (2003). The king's courts, or courts of law, included the Court of Common Pleas, the Court of King's Bench, and the Court of Exchequer. Fleming James, Jr. & Geoffrey C. Hazard, Jr., Civil Procedure sec. 1.3 (3d ed.1985). Courts of law referred to courts "proceeding according to the course of the common law and governed by its rules and principles." Black's Law Dictionary 358 (6th ed.1990). Courts of law were restricted to following the "unbending application of common-law rules and statutes." 27A Am.Jur.2d *Equity* sec. 2 (1996) (footnote omitted).

Courts of law were criticized because they "were slow to develop new types of actions or grant new forms of relief, and were inflexible and technical in pleading and practice...." Note, *The Right to a Nonjury Trial,* 74 Harv. L. Rev 1176, 1179 (1961). As a result, the courts of law could not always provide litigants with justice, and the king's subjects continued to petition him to prevent injustice that was without remedy in the courts of law. Ellen E. Sward, *A History of the Civil Trial in the*

*United States*, 51 U. Kan. L.Rev. 347, 349 (2003). Another body of law developed in the late 13th or early 14th century to overcome the "shortcomings" of the courts of law. *Id.* at 349–50; *see* Note, *The Right to a Nonjury Trial*, 74 Harv. L. Rev 1176, 1179 (1961).

This supplemental body of jurisprudence was called equity, and the tribunal responsible for resolving claims in equity was called the High Court of Chancery. 27A Am.Jur.2d *Equity* sec. 3 (1996). Equity refers to "a system of rules and principles" that originated "as an alternative to the harsh rules of common law ... based on what was fair in a particular situation." Black's Law Dictionary 540 (6th ed.1990). Equity "denotes the spirit and habit of fairness, justness, and right dealing" that regulates the exchanges between people. *Id.* In contrast to courts of law, courts of equity could "adjust remedies in a feasible and practical way to eliminate the conditions or redress the injuries...." 27A Am. Jur.2d *Equity* sec. 2 (1996).

This system was very inefficient, however, as the two courts were often at odds with each other. For example, courts of equity would enjoin claimants at law from prosecuting their actions when the chancellor decided that permitting the suit to proceed at law would cause inequity because an equitable defense existed that the court of law would not recognize. Fleming James, Jr. & Geoffrey C. Hazard, Jr., Civil Procedure sec. 1.5, at 14 (3d ed.1985); Note, *The Right to a Nonjury Trial*, 74 Harv. L. Rev 1176, 1181–82 (1961). Additionally, claims at law often were dismissed because the proper remedy was in equity, and parties in an action at law were precluded from establishing equitable claims or defenses relating to the issue being tried at law. Fleming James, Jr. & Geoffrey C. Hazard, Jr., Civil Procedure sec. 1.5, at 16 (3d ed.1985). "In many situa-

tions two or more suits had to be brought to adjust properly the rights and remedies of the same parties growing out of a single transaction." *Id.* at 17. On the other hand, a court of equity could enjoin proceedings at law that it determined were "duplicitous." Ellen E. Sward, *A History of the Civil Trial in the United States*, 51 U. Kan. L.Rev. 347, 360 (2003).

Under the doctrine known as equitable cleanup, courts of equity would occasionally grant, in addition to equitable remedies, relief obtainable at law when it was incidental to a request for equitable relief. *Id.;* Note, *The Right to a Nonjury Trial*, 74 Harv. L. Rev 1176, 1181–82 (1961). When a court of equity invoked its power of equitable cleanup, a jury trial was precluded, thereby eliminating the multiplicity of actions that would otherwise occur if equity dismissed the suit and required the remainder of the litigation to be resolved through an action at law. Note, *The Right to a Nonjury Trial*, 74 Harv. L. Rev 1176, 1181–82 (1961). When litigants propounded claims and defenses containing overlapping issues in equity and at law, the employment of equitable cleanup eliminated the retrying of lawsuits. Thus, the equitable cleanup doctrine developed as a means to attain a more practical and efficient resolution of disputes with both claims at law and in equity. *See* Fleming James, Jr. & Geoffrey C. Hazard, Jr., Civil Procedure sec. 8.2, at 353 (2d ed.1977) (as early as 1729, courts of equity would decide all aspects of controversy, including issues typically reserved for courts of law, if plaintiff wished; court of equity decided in 1786 to retain jurisdiction to grant legal relief upon failure of plaintiff's claim for equitable relief).

### V.

Similar to the dual courts of equity and law in England, Missouri's original consti-

tution established a judiciary with equitable powers vested in a body distinct from the legal tribunals. Article V of the Constitution of 1820, the state's original constitution, provided in pertinent part:

> Section 1. The judicial power, as to matters of law and equity, shall be vested in a *"Supreme Court,"* in a *"Chancellor,"* in *"Circuit Courts,"* and in such inferior tribunals as the general assembly may, from time to time, ordain and establish.
>
> . . . .
>
> Section 9. *The jurisdiction of the court of chancery shall be co-extensive with the state;* . . .
>
> Section 10. The *court of chancery* shall have original and appellate jurisdiction in all matters of equity, and a general control over executors, administrators, guardians, and minors, subject to appeal in all cases to the supreme court, under such limitations as the general assembly may by law provide.

However, Missouri almost immediately abandoned this dichotomy of its courts.[3] Before the office of chancellor could take root in the state's legal culture, the general assembly proposed two articles of amendments abolishing the office and vesting equity jurisdiction in this Court and the circuit courts. *See* Mo. Const. amds. 1, 2 at RSMo 1825, vol. 1, at 65. The following proposed articles of amendment were approved by the voters and took effect in 1823: [4]

> Section 1. The office of chancellor is hereby abolished, and the supreme court and circuit courts shall exercise chancery jurisdiction, in such manner and under such restriction as shall be prescribed by law.
>
> Section 2. The judicial power, as to matters of law and equity, shall be vested in a supreme court, in circuit courts, and in such inferior tribunals as the general assembly may, from time to time, ordain and establish; provided, the general assembly may establish a court or courts of chancery, and from time to time prescribe the jurisdiction, powers and duties thereof.

*Id.* Furthering the trend, the state's second constitution, in 1865, omitted entirely any reference to chancery: "Section I. The judicial power, as to matters of law and equity, shall be vested in a supreme court, in district courts, in circuit courts, and in such inferior tribunals as the general assembly may, from time to time, establish." Mo. Const. art. VI, sec. I (1865).[5]

---

3. Interestingly, a similar action occurred much later in England as a result of the Judicature Act of 1873. The Judicature Act, which took effect in 1875, eliminated the separation between the king's courts, or courts of law, and the High Court of Chancery, or the court of equity, and created the High Court of Justice to unite their collective powers. 27A Am.Jur.2d *Equity* sec. 3 (1996); Fleming James, Jr. & Geoffrey C. Hazard, Jr., Civil Procedure sec. 1.6 (3d ed.1985); F.W. Maitland, The Constitutional History of England 471 (H.A.L. Fisher ed., 1908, 1974 reprint). The High Court of Justice possessed complete jurisdiction and was charged with administering "one system of law in place of the two systems previously known as 'law' and 'equity.'" 27A Am.Jur.2d *Equity* sec. 3 (1996).

4. William Harper was Missouri's first and only chancellor. He served in that office from 1819–1822, but records do not show that he ever issued a single judgment in equity. When the office was abolished, he returned home to his native South Carolina, where he served two terms as chancellor with distinction. *See* Biographical Directory of the United States Congress 1774—Present at http://bioguide.congress.gov/scripts.biodisplay.

5. The current version of Article V, section 1 provides: "The judicial power of the state shall be vested in a supreme court, a court of appeals consisting of districts as prescribed by law, and circuit courts."

## VI.

Even though the Missouri constitution merged the jurisdiction of equity and law in 1823 and generally vested their combined jurisdiction in the courts, the terms "legal jurisdiction" and "equitable jurisdiction" continue to be used. *See, e.g., Ryan v. Spiegelhalter*, 64 S.W.3d 302, 306 (Mo. banc 2002) ("By virtue of its equitable jurisdiction, the probate division is not limited to questions of legal title"); *Deutsch v. Wolff*, 994 S.W.2d 561, 567 (Mo. banc 1999) ("[O]nce equity acquires jurisdiction, it will retain it so as to afford complete justice between the parties."). Using these terms to discuss litigation in modern courts is a misnomer insofar as the constitution eliminated any separate legal or equitable jurisdiction.[6] As stated above, the current version of the constitution refers only to the "judicial power" of the state being "vested in a supreme court, a court of appeals ..., and circuit courts" and does not distinguish or mention any dual system of law and equity. Mo. Const. art. V, sec. 1.[7]

Rather than referring to jurisdiction, labeling an action as equitable or legal in the modern sense typically bespeaks the type of relief being sought. *Hammons v. Ehney*, 924 S.W.2d 843, 846 (Mo. banc 1996); Dan B. Dobbs, Law of Remedies sec. 1.2 (2d ed.1993); *see* Rule 42.01 ("There shall be one form of action to be known as 'civil action.'"). Equitable remedies are coercive remedies like declaratory judgments and injunctions, the latter of which includes specific performance and some types of restitution. Dan B. Dobbs, Law of Remedies sec. 2.1(2) (2d ed.1993);[8] *see Gurniak v. Liszewski*, 411 S.W.2d 84, 86 (Mo.1967) (declaratory judgment remedy is *sui generis* and derives from equity); *State ex rel. Ellis v. Creech*, 364 Mo. 92, 259 S.W.2d 372, 374 (1953) (injunction is an equitable remedy and is the "most important process issued by courts of equity"). Damages and, in some instances, restitution constitute the legal remedies. Dan B. Dobbs, Law of Remedies sec. 1.2 (2d ed.1993).

6. Simply put, "[j]urisdiction defines the powers of courts to inquire into facts, apply the law, make decisions, and declare judgment." Black's Law Dictionary 853 (6th ed.1990); *see Swenson v. Swenson*, 299 S.W.2d 523, 525 (Mo.1957) ("To determine what is the applicable law to a case, to apply that law, and to render judgment accordingly, are the very essence of judicial power.").

7. Although the dissenting opinion advocates retaining the notion of "equitable jurisdiction," it does not offer any meaningful definition of that misnomer nor does it indicate how it would resolve the inconsistencies between *Jaycox, Burnett, Krummenacher, Rockhill,* and the *Willman* decisions.

8. "The chief remedial defenses to equitable claims are the unclean hands defenses and laches." Dan B. Dobbs, Law of Remedies sec. 2.4(1) (2d ed.1993); *see State ex rel. Gen. Dynamics Corp. v. Luten*, 566 S.W.2d 452, 460 (Mo. banc 1978) ("[O]ne who seeks equity must come with 'clean hands.'"); *Franklin v. Franklin*, 365 Mo. 442, 283 S.W.2d 483, 486 (1955) (doctrine of "clean hands" will preclude a remedy from a party that has violated equitable principles in prior conduct); *see also O'Connell v. School Dist. of Springfield R–12*, 830 S.W.2d 410, 417 (Mo. banc 1992) (equitable doctrine of laches bars a claim if "an unreasonable delay prejudices an opposing party"). In addition, unconscionability is an equitable defense in contract actions. *Blankenship v. Porter*, 479 S.W.2d 409, 414 (Mo.1972); *see* Dan B. Dobbs, Law of Remedies sec. 2.4(3) (2d ed.1993) (court acting in equity may refuse to grant specific enforcement "to a contract which the courts deem unfair, unconscionable or too one-sided"). Estoppel operates as a defense to legal and equitable claims. Dan B. Dobbs, Law of Remedies sec. 13.2(5), at 866–67 (2d ed.1993); *see Weiss v. Rojanasathit*, 975 S.W.2d 113, 120 (Mo. banc 1998) ("The purpose of the doctrine of equitable estoppel is to prevent a party from taking inequitable advantage of a situation he or she has caused.").

The idea of equitable cleanup jurisdiction is also a misnomer. Any circuit court with jurisdiction over the parties and a controversy can render whatever relief is required, be it equitable or a request for damages. There is never a need to have two separate proceedings, one in equity and one at law.[9] The difficulties that arise when claims and defenses at law and in equity are joined in a single lawsuit are not jurisdictional, but practical: What issues should be tried to the court or to the jury, in what order, and how will the order of the trial affect issue preclusion and the practical efficiency in the trial process?

## VII.

The practice of trial by jury also dates back to old England. Jury trials began evolving after the Norman Conquest of 1066. Ellen E. Sward, *A History of the Civil Trial in the United States*, 51 U. Kan. L.Rev. 347, 353 (2003). The first juries were remnants of the Norman inquest, a method by which the king obtained information through summoning people and requiring them to provide him, under oath, with the information he desired. *Id.* at 353–54. Inquest jurors, then, were summoned to swear under oath as to the truth in the matter disputed at trial. *Id.* at 354. If they did not know the truth, the jurors made inquiries until they learned the truth to a degree of certainty such that they would swear to it. *Id.*

The evolution of the jury from witnesses to impartial fact finders continued over the next several centuries. *Id.* By the time the United States of America was founded, the English common law civil trial included a presentation of evidence to a jury of 12 qualified men—property owners who had no personal knowledge of the matter before them—to determine issues of fact in the common law courts. *Id.* at 355–56. The jury heard the evidence and rendered its decision accordingly. *Id.* at 356.

The right to a trial by jury has become a fundamental element of our judicial system, expressing the faith of our people in the common wisdom of ordinary people to ferret out the truth from conflicting evidence. This right is guaranteed in the Seventh Amendment of the U.S. Constitution[10] and in Article I, section 22(a) of the Missouri Constitution.[11]

Missouri's constitutional guarantee to a jury trial has never been applied to claims seeking equitable relief. *See State ex rel. Diehl v. O'Malley*, 95 S.W.3d 82, 85 (Mo. banc 2003). Early Missouri cases appear to have followed the doctrine of equitable cleanup jurisdiction in mixed claims. *See Alexander v. Relfe*, 74 Mo. 495, 520–21 (1881) ("equitable jurisdiction was not ousted because either a judgment in money was asked or rendered"); *Baile v. St. Joseph Fire & Marine Ins. Co.*, 73 Mo. 371, 384 (Mo.1881) (in equitable suit, awarding damages on constructive insurance contract "avoid[s] circuity of action"); *State v. McKay*, 43 Mo. 594, 598 (1869) (court of equity "will sometimes give damages which are generally only recoverable

9. The dissenting opinion apparently would cling to the inefficient and wasteful need for a second trial at law if equity "fails of establishment" in the initial request for equitable relief.

10. The Seventh Amendment guarantee to a jury trial does not apply in state courts. *See Hammons*, 924 S.W.2d at 848 n. 3. The Seventh Amendment provides:

In suits at common law where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise reexamined in any court of the United States, than according to the rules of common law.

11. Article I, section 22(a) declares that "the right of trial by jury as heretofore enjoyed shall remain inviolate...."

at law, in lieu of equitable relief, where it has obtained jurisdiction on other grounds"); *Keeton v. Spradling*, 13 Mo. 321, 323 (1850) (trial court could "proceed with the whole case and decide the merits" in claim at equity despite existence of claim at law involving same *res* ); 1 John Norton Pomeroy, A Treatise on Equity Jurisprudence secs. 180–89 (1881) (discussing concurrent jurisdiction of courts in mixed claims at law and in equity); Joseph Fred Benson, *Reception of the Common Law in Missouri: Section 1.010 as Interpreted by the Supreme Court of Missouri*, 67 Mo. L.Rev. 595, 602–04 (2002) (whether reception of common law included equity jurisprudence). However, Article I, section 22(a) of the Missouri Constitution nonetheless reflects the general historical preference for trial by jury in our state. To allow the doctrine of equitable cleanup as a blanket rule to supplant a litigant's ability otherwise to have a jury trial of his or her claims at law demonstrates inadequate respect for this preference.[12]

### VIII.

■■■ Missouri trial courts have jurisdiction to try cases involving requests for equitable relief and damages in one proceeding.[13] The trial court has discretion to try such cases in the most practical and efficient manner possible, consistent with Missouri's historical preference for a litigant's ability to have a jury trial of claims at law. Unless circumstances clearly demand otherwise, trials should be conducted to allow claims at law to be tried to a jury, with the court reserving for its own determination only equitable claims and defenses, which it should decide consistently with the factual findings made by the jury. As the United States Supreme Court noted in *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959):

> If there should be cases where the availability of declaratory judgment or joinder in one suit of legal and equitable causes would not in all respects protect the plaintiff seeking equitable relief from irreparable harm while affording a jury trial in the legal cause, the trial court will necessarily have to use its discretion in deciding whether the legal or equitable cause should be tried first. Since the right to jury trial is a constitutional one, however, while no similar requirement protects trials by the court, that discretion is very narrowly limited and must, whenever possible, be exercised to preserve jury trial.

(footnote omitted). If necessary, special interrogatories to the jury may be used.[14]

---

**12.** Of the fifty independent court systems in the United States twenty-two have attempted to determine the right to trial by jury by the distinction between law and equity, and at the same time to abolish the distinction for all other purposes. It has been pointed out that the more successful they are in the latter attempt the more difficulty they have in the former.

Note, *The Right to Jury Trial Under Merged Procedures*, 65 Harv. L.Rev. 453, 453 (1952) (footnotes omitted).

**13.** Discussion of these matters is complicated further by an overlap in terminology. While lawyers generally speak of legal and equitable issues, they also refer to legal and factual questions regarding the respective roles of the judge and the jury. The role of the judge is to "determine and decide questions of law presented at the trial[ ] and to state the law to the jury. . . ." 75A Am.Jur.2d *Trial* sec. 714 (1996) (footnotes omitted); *see Adams v. Children's Mercy Hosp.*, 832 S.W.2d 898, 907 (Mo. banc 1992). This opinion uses phrases such as "claim at law" and "request for damages" in an attempt to avoid confusion with using "legal" in the sense that it refers to a question of law for a judge to determine.

**14.** This procedure merely tracks the procedure followed in the federal courts. *See* Jeffrey A. Burns, *Methods of Practice*, 2 Missouri Practice section 10.1, at 344 (2002).

In some situations, the practical and efficient trial of a case may require limited incidental claims at law to be tried to the court in connection with equitable matters. Trying incidental claims at law to the court, however, should be the exception and not the rule. Care should be taken to guard against attempts to characterize claims requesting damages as "incidental" in a strategic effort to avoid a jury trial. *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 470, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *see Krummenacher*, 217 S.W.2d at 475; Dan B. Dobbs, Law of Remedies sec. 2.6(4), at 119 (2d ed.1993).

This procedure preserves the trial court's flexibility to try cases in the most practical and efficient manner possible. It also preserves and maintains the distinction between equitable relief and damages while respecting the historical preference for trial by jury. Furthermore, it escapes the inconsistent application of outdated historical theories inherent in our existing case law. It does not, however, enlarge or expand the right to a jury trial in this state. Equitable issues that traditionally have been tried to the court shall still be tried to the court.

## IX.

In this case, Leonardi seeks damages in three counts of his counterclaim, titled: Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing (Contract Claim), and Breach of Implied Covenant of Good Faith and Fair Dealing (Tort Claim). The trial court denied his request for a jury trial for all of these claims.

The existence of Radiant's equitable claims cannot alone justify a wholesale denial of Leonardi's request for a jury trial of his counterclaims. A writ in prohibition is appropriate when a trial court improperly denies the right to a trial by jury.

*Diehl*, 95 S.W.3d at 84 n. 2. The preliminary order in prohibition is made absolute as modified.

WOLFF, STITH, and TEITELMAN, JJ., and HOLLIGER, Sp.J., concur.

BENTON, J., dissents in separate opinion filed.

LIMBAUGH, J., concurs in opinion of BENTON, J.

WHITE, C.J., not participating.

DUANE BENTON, Judge, dissenting.

Missouri has a clear rule: equity retains jurisdiction once acquired, until the facts that sustain equity jurisdiction "fail of establishment." *State ex rel. Willman v. Sloan*, 574 S.W.2d 421, 422–23 (Mo. banc 1978) (unanimous court); *Jaycox v. Brune*, 434 S.W.2d 539, 543 (Mo.1968); *Jeffrey A. Burns, Methods of Practice*, 2 Mo. Practice § 10.1, pp. 343–45 (2002); *Robert H. Dierker & Richard J. Mehan, Contracts, Equity, and Statutory Action Handbook*, 35 Mo. Practice § 23.12, pp. 464–65 (2004).

The facts "fail of establishment" when: 1) legal relief alone is sought, or 2) plaintiff's equitable claims are dismissed or terminated adversely. *Willman*, 574 S.W.2d at 423. The judge retains jurisdiction until he or she "decides all of the issues adequately and fairly between the parties." *Custom Muffler and Shocks, Inc. v. Gordon Partnership*, 3 S.W.3d 811, 817 (Mo. App.1999). "It is a well-established rule that where a court of equity once acquires jurisdiction of a cause it will retain it to do full and complete justice." *Seested v. Dickey*, 318 Mo. 192, 300 S.W. 1088, 1101–02 (1927). This rule has been consistently followed for over 100 years. *See* cases cited in the appendix to this opinion.

The majority labels the established law "inconsistent and confusing." The cases cited by the majority are not inconsistent.

There is (1) the general rule, and (2) the "fail of establishment" exception. The doctrine is clear, but the results differ, depending on the facts.

All the cases cited by both opinions follow the general proposition that once equity attaches, the court retains jurisdiction. *Krummenacher, Burnett,* and *Jaycox* all apply the "fail of establishment" exception, and therefore require a jury trial. The *Rockhill* and the *Willman* decisions, on the other hand, do not reach the "fail of establishment" exception to the general rule.

The majority opinion suggests that *Rockhill* and *Willman* are inconsistent with the others. To the contrary, the cases are wholly consistent based on the type of *claim* (the final form of relief—money—does not matter.) In both *Rockhill* and *Willman* the court awarded money damages for the equitable claim, and a legal claim was never raised. "Although damages are usually a legal remedy, a court of equity may decree them where they are the relief necessary in order to do equity." *Willman,* 574 S.W.2d at 422; *see Rockhill Tennis Club of Kansas City v. Volker,* 331 Mo. 947, 56 S.W.2d 9, 20 (1932).

In *Krummenacher, Burnett,* and *Jaycox,* both legal and equitable claims were raised. These cases apply the "fail of establishment" exception. The equitable claims were dismissed or terminated adversely—leaving only legal claims—and therefore, a jury trial was required.

In this case, the facts did not fail of establishment. Legal relief was not the sole remedy sought. Further, Plaintiff's claim for injunction was not dismissed or terminated adversely. The trial judge expressly reserved the claim for a permanent injunction for the bench trial, and legal relief wholly depended on the claim for a permanent injunction. The trial judge thus retained jurisdiction over all claims.

The rule has been followed for over a century because it is fair and efficient. It spurs early resolution of equitable claims, because (1) if the judge grants temporary relief, full relief can follow promptly, or (2) if the judge denies all equitable relief, legal claims still go to the jury. The Missouri rule brings prompter disposition of most cases, avoiding a waste of judicial time and resources, and unnecessary litigation expenses. *Straatman,* 780 S.W.2d at 710–11. There is no reason to abandon settled law, as reflected in the long line of cases in the appendix. I dissent.

## APPENDIX

*Deutsch v. Wolff,* 994 S.W.2d 561, 567 (Mo. banc 1999);

*State ex rel. Drey v. Hoester,* 608 S.W.2d 401, 404 (Mo. banc 1980);

*Craig v. Jo B. Gardner, Inc.,* 586 S.W.2d 316, 325 (Mo.1979);

*Metropolitan St. Louis Sewer Dist. v. Zykan,* 495 S.W.2d 643, 658 (Mo.1973);

*Willman v. Beheler,* 499 S.W.2d 770, 778 (Mo.1973);

*Perry v. Perry,* 484 S.W.2d 257, 259 (Mo.1972);

*Wallach v. Joseph,* 420 S.W.2d 289, 296 (Mo.1967);

*Sebree v. Rosen,* 374 S.W.2d 132, 138 (Mo.1964);

*Burnett v. Johnson,* 349 S.W.2d 19, 22–23 (Mo.1961);

*Anison v. Rice,* 282 S.W.2d 497, 502 (Mo.1955);

*Missouri Cafeteria, Inc. v. McVey,* 362 Mo. 583, 242 S.W.2d 549, 553 (1951);

*Krummenacher v. W. Auto Supply Co.,* 358 Mo. 757, 217 S.W.2d 473, 475 (1949);

*Miller v. Haberman,* 359 Mo. 1012, 224 S.W.2d 1002, 1006 (1949);

*De Tienne v. Peters,* 354 Mo. 166, 188 S.W.2d 954, 956 (1945);

*Hallauer v. Lackey,* 353 Mo. 1244, 188 S.W.2d 30, 34 (1945);

*McKay v. Snider,* 354 Mo. 674, 190 S.W.2d 886, 893 (1945);

*Townsend v. Maplewood Investment & Loan Co.,* 351 Mo. 738, 173 S.W.2d 911, 913–14 (1943);

*Waugh v. Williams,* 342 Mo. 903, 119 S.W.2d 223, 227 (1938);

*Rains v. Moulder,* 338 Mo. 275, 90 S.W.2d 81, 85 (1936);

*Rockhill Tennis Club v. Volker,* 331 Mo. 947, 56 S.W.2d 9, 20 (1932);

*Phelps v. Scott,* 325 Mo. 711, 30 S.W.2d 71, 75 (1930);

*Hurst Automatic Switch & Signal Co. v. Trust Co. of St. Louis County,* 291 Mo. 54, 236 S.W. 58, 62 (1921);

*Marston v. Catterlin,* 290 Mo. 185, 234 S.W. 816, 817 (1921);

*Growney v. O'Donnell,* 272 Mo. 167, 198 S.W. 863, 865–66 (1917);

*Waddle v. Frazier,* 245 Mo. 391, 151 S.W. 87, 90 (1912);

*Barnard v. Keathley,* 230 Mo. 209, 130 S.W. 306, 310 (1910);

*School District Number One v. Holt,* 226 Mo. 406, 126 S.W. 462, 464 (1910);

*Real Estate Sav. Inst. v. Collonious,* 63 Mo. 290, 295 (1876);

*Gray v. White,* 26 S.W.3d 806, 821 (Mo.App.1999);

*Hunt v. Smith,* 992 S.W.2d 303, 307 (Mo.App.1999);

*State ex rel. Wayside Waifs v. Williamson,* 3 S.W.3d 390, 394 (Mo.App.1999);

*Webcon Group, Inc. v. S.M. Props., L.P.,* 1 S.W.3d 538, 542 (Mo.App.1999);

*Brandecker v. Morris (In re Estate of Dean),* 967 S.W.2d 219, 224 (Mo.App.1998);

*Meyer v. Lofgren,* 949 S.W.2d 80, 84 (Mo.App.1997);

*Licare v. Hill,* 879 S.W.2d 777, 779 (Mo.App.1994);

*Collins v. Jenkins,* 821 S.W.2d 892, 894 (Mo.App.1992);

*Stafford v. McCarthy,* 825 S.W.2d 650, 658 (Mo.App.1992);

*Kopp v. Franks,* 792 S.W.2d 413, 425–26 (Mo.App.1990);

*Straatman v. Straatman,* 780 S.W.2d 709, 710–11 (Mo.App.1989);

*Washington University Medical Center Redevelopment Corp. v. Wolfgram,* 730 S.W.2d 289, 291 (Mo.App.1987);

*Siesta Manor, Inc. v. Cmty. Fed. Sav. and Loan Ass'n.,* 716 S.W.2d 835, 838–39 (Mo.App.1986);

*Pipes v. Sevier,* 694 S.W.2d 918, 923 (Mo.App.1985);

*Dunn v. Bemor Petroleum, Inc.,* 680 S.W.2d 304, 307 (Mo.App.1984);

*Thornbrugh v. Poulin,* 679 S.W.2d 416, 417–18 (Mo.App.1984);

*Shelter Mut. Ins. Co. v. Parrish,* 659 S.W.2d 315, 318 (Mo.App.1983);

*Suburbia Pools, Inc. v. Fischer,* 661 S.W.2d 823, 824 (Mo.App.1983);

*Linville v. Wilson,* 628 S.W.2d 422, 425 (Mo.App.1982);

*Spencer's River Roads Bowling Lanes, Inc. v. Unico Management Co.,* 615 S.W.2d 121, 125 (Mo.App.1981);

*Jenni v. Gamel,* 602 S.W.2d 696, 701 (Mo.App.1980);

*Shultz v. Kline,* 552 S.W.2d 333, 334 (Mo.App.1977);

*Owens v. Savage,* 518 S.W.2d 192, 202 (Mo.App.1974);

*Dunning v. Alfred H. Mayer Co.,* 483 S.W.2d 423, 428 (Mo.App.1972);

*Kirtz v. Grossman,* 463 S.W.2d 541, 545 (Mo.App.1971);

*Lee v. New Age Federal Sav. & Loan Association,* 425 S.W.2d 271, 273–74 (Mo. App.1968);

*McDown v. Wilson,* 426 S.W.2d 112, 118 (Mo.App.1968);

*Pittman v. Faron,* 315 S.W.2d 836, 839 (Mo.App.1958);

*Wenzelburger v. Wenzelburger,* 296 S.W.2d 163, 165 (Mo.App.1956);

*Sapp v. Garrett,* 284 S.W.2d 49, 52 (Mo. App.1955);

*Goldman v. Ashbrook,* 262 S.W.2d 165, 168 (Mo.App.1953);

*Methodist Benevolent Ass'n v. Bank of Sweet Springs,* 227 Mo.App. 566, 54 S.W.2d 474, 479 (1932);

*Bentrup v. Johnson,* 223 Mo.App. 299, 14 S.W.2d 537, 541(1929);

*Supreme Lodge, K.P. v. Dalzell,* 205 Mo. App. 207, 223 S.W. 786, 789 (1920).

*Foster v. Williams,* 144 Mo.App. 219, 128 S.W. 797, 799 (1910).