

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

TORCH ELECTRONICS, LLC, ET AL., )
                                                              )

           Appellants-Respondents, )

                                                              )

           v. )     WD86610 (Consolidated with WD86674
                                                             )     and WD86689)

MISSOURI DEPARTMENT OF PUBLIC )
SAFETY, ET AL., )     Opinion filed:  May 28, 2024
                                                              )

           Respondents, )

                                                               )

MISSOURI GAMING ASSOCIATION, )

                                                                 )

           Appellant. )

## APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY, MISSOURI
## THE HONORABLE DANIEL R. GREEN, JUDGE

Division Three:  Cynthia L. Martin, Presiding Judge,
Mark D. Pfeiffer, Judge and Edward R. Ardini, Jr., Judge

Torch Electronics, LLC ("Torch") operates and licenses electronic gaming devices, and placed its devices in convenience stores owned by Warrenton Oil Co. ("Warrenton") pursuant to a license agreement. The Missouri State Highway Patrol (the "Highway Patrol") seized the devices, deeming them to be illegal "gambling devices." Torch and Warrenton (collectively "Plaintiffs") initiated this action against the Highway Patrol and the Missouri Department of Public Safety ("DPS"), seeking a declaration that the devices

are not "gambling devices" as defined in section 572.010, RSMo,[1] and an injunction preventing the Highway Patrol from seizing them as such. The Missouri Gaming Association (the "Gaming Association") intervened and filed a counterclaim against Plaintiffs, seeking a declaration that the devices are illegal and an injunction prohibiting Plaintiffs from operating them. Plaintiffs moved to dismiss the Gaming Association's counterclaim; the Highway Patrol and DPS moved to dismiss Plaintiffs' amended petition. The Circuit Court of Cole County (the "trial court") granted both motions and dismissed all claims with prejudice. Plaintiffs and the Gaming Association appeal. We affirm the dismissals on the grounds that the parties sought declaratory judgments and injunctive relief relating to a criminal law, Missouri courts do not provide equitable relief relating to a criminal statute absent a challenge to the statute's constitutionality or validity, and no such challenge was raised by the parties.

### Factual and Procedural Background

Plaintiffs initiated this action against the Highway Patrol and DPS in February 2021. They alleged that Warrenton granted Torch licenses to place and operate its gaming devices in Warrenton convenience stores for customer use, the Highway Patrol determined that Torch gaming devices are illegal gambling devices, the Highway Patrol engaged in a campaign of harassment of stores that housed Torch gaming devices, and the Highway Patrol seized Torch devices pursuant to a warrant. Plaintiffs alleged that the Highway Patrol and DPS "persist in their position that the machines are illegal and intend to take

---

[1] All statutory references are to RSMo 2016.

future actions to seize them" and the Highway Patrol and DPS's actions were "based on an unlawful and unreasonable interpretation of the definition of 'gambling device'" found in section 572.010, RSMo. Plaintiffs further alleged the Highway Patrol and DPS "have actively communicated their position to multiple prosecutors including prosecutors in jurisdictions where Plaintiffs operate" and that "[b]ased on the advice and encouragement of [the Highway Patrol and DPS], prosecutors across Missouri are taking different interpretations of the law and different enforcement positions."

Plaintiffs sought a declaration that Torch's devices are not "gambling devices" as defined in section 572.010 and that Plaintiffs "have the legal right to operate the amusement devices and/or locate them within businesses controlled by the Plaintiffs." They also requested the Highway Patrol and DPS be enjoined from "enforcing any policy that declares Torch's amusement devices to be gambling devices" and removing the devices from convenience stores.

The Gaming Association sought and was granted leave to intervene. The Gaming Association is a statewide trade association, whose members are gaming casinos licensed by the Missouri Gaming Commission.[2] The Gaming Association filed a counterclaim for declaratory judgment and injunctive relief against Plaintiffs. It asserted that Plaintiffs are not—nor could they be—licensed by the Missouri Gaming Commission as operators of gambling games in a lawful casino, and claimed that the "unregulated and unlawful

---

[2] By operation of section 313.780, there is a limit of thirteen casino licenses that may be issued in Missouri. A Missouri casino may only be operated on an "excursion gambling boat" that is licensed by the Missouri Gaming Commission. *See* § 313.800.1(9).

3

placement and operation of [Torch's] illegal devices . . . has resulted in and will continue to result in lost casino and non-casino income and business for Missouri Gaming Association's members." The Gaming Association sought a declaratory judgment that Torch's devices "are illegal lotteries under Article III, Section 39(9) of the Missouri Constitution," that the devices are illegal lotteries, slot machines, and gambling devices under chapter 572, RSMo (governing gambling crimes), and that Plaintiffs are jointly operating an unlawful gambling activity proscribed by chapter 313, RSMo (governing licensed gaming activities). The Gaming Association also sought injunctive relief prohibiting Plaintiffs from operating the devices.

Plaintiffs moved to dismiss the Gaming Association's counterclaim on the grounds that the Gaming Association lacked standing and "failed to state a claim for declaratory judgment," in that the Gaming Association had no justiciable controversy because the Declaratory Judgment Act did not permit a private entity to sue another private entity regarding the interpretation and/or application of a statute.

The Highway Patrol and DPS moved to dismiss Plaintiffs' amended petition, asserting "the request to enter a judgment over the meaning and whether a gaming device falls within or outside certain criminal statutes is an improper use of the declaratory judgment act," the trial court lacked the inherent authority to prospectively direct law enforcement agencies over how to exercise their police power, the issue was "not ripe," and Plaintiffs had "available remedies at law and [could not] show an irreparable injury."

The trial court granted both motions to dismiss and entered an amended judgment dismissing all claims with prejudice. The trial court dismissed Plaintiffs' claim for

4

declaratory relief on multiple grounds, including "Plaintiffs' relief sought under the Declaratory Judgment Act is not proper as it seeks a declaration over the application of criminal statutes without a concurrent claim regarding unconstitutionality," "there is no justiciable controversy that presents a real, substantial, and presently existing controversy," the "controversy is not ripe," and "Plaintiffs have adequate remedies at law." The trial court dismissed Plaintiffs' claim for injunctive relief "as the relief sought is outside the jurisdiction of this Court in which it is asked to invade/limit the exercise of legitimate police powers by the Defendant the Missouri State Highway Patrol." The trial court also found Plaintiffs "have available remedies at law and have not suffered irreparable harm."

The trial court dismissed the Gaming Association's counterclaim on the ground that "these claims lack a justiciable controversy against Plaintiffs."

Plaintiffs and the Gaming Association appeal.

**Standard of Review**

We review the grant of a motion to dismiss *de novo*, accepting the facts alleged in the petition as true and liberally construing all reasonable inferences in favor of the plaintiff. *Williams v. Bayer Corp.*, 541 S.W.3d 594, 599 (Mo. App. W.D. 2017). "In reviewing a judgment of dismissal, this court must affirm the dismissal if it can be sustained on any ground which is supported by the motion to dismiss, regardless of whether the circuit court relied on that ground." *Salvation Army, Kan. v. Bank of Am.*, 435 S.W.3d 661, 665 (Mo. App. W.D. 2014) (internal marks omitted). "In fact, if the court correctly dismissed the claim, the ground upon which the dismissal was based is immaterial." *Id.* (internal marks omitted).

**Analysis**

The Gaming Association asserts three points on appeal; Plaintiffs assert eight.[3] We address Plaintiffs' appeal first for ease of analysis.

As explained above, the trial court dismissed Plaintiffs' amended petition on various grounds. In Points I, II, and III, Plaintiffs challenge the trial court's determination that "Plaintiffs' relief sought under the Declaratory Judgment Act is not proper as it seeks a declaration over the application of criminal statutes without a concurrent claim regarding unconstitutionality." We find the trial court did not err in dismissing Plaintiffs' claims on this basis.

The Declaratory Judgment Act permits a person "whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise," to "have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder." § 527.020. "Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper." § 527.080. Pursuant to these provisions, Plaintiffs sought a declaratory judgment that Torch's devices are not "gambling devices"

---

[3] Plaintiffs assert we should dismiss the Gaming Association's appeal because its statement of facts violates Rule 84.04(c) by including extensive argument and irrelevant facts. We agree that the Gaming Association engages in advocacy in its statement of facts and refers to facts outside the scope of the issues raised in this appeal, which amounts to a violation of Rule 84.04(c) (The statement "shall be a fair and concise statement of the facts relevant to the questions presented for determination without argument."). However, based on our preference for deciding appeals on the merits, and because we can understand the issues raised in the argument section of the Gaming Association's brief, we decline to dismiss the Gaming Association's appeal. *See Fisher v. Slinger*, 634 S.W.3d 704, 707 (Mo. App. W.D. 2021) (although the appellant's statement of facts violated Rule 84.04(c), we declined to dismiss the appeal because the argument section of the brief allowed us to understand the issues being raised).

6

as defined in section 572.010 and that Plaintiffs have a legal right to operate them, and an accompanying injunction to prevent the Highway Patrol and DPS from seizing them as illegal gambling devices.

Chapter 572 is located in Missouri's Criminal Code; its sections set forth the gambling offenses and designate their criminal punishments. Section 572.010 is the definitional section of the chapter, and defines "gambling device" as "any device, machine, paraphernalia or equipment that is used or usable in the playing phases of any gambling activity, whether that activity consists of gambling between persons or gambling by a person with a machine." § 572.010(5). A person engages in "gambling" when he or she "stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his or her control or influence, upon an agreement or understanding that he or she will receive something of value in the event of a certain outcome." § 572.010(4). "Gambling does not include any licensed activity . . . ." *Id.* The gambling offenses delineated in chapter 572 include possession of a gambling device (a class A misdemeanor) and promoting gambling in the first degree, which may be committed by setting up and operating a gambling device (a class E felony).

Generally, Missouri courts lack authority to enter a declaratory judgment or order injunctive relief that interferes with the enforcement of criminal statutes. *See State ex rel. Eagleton v. McQueen*, 378 S.W.2d 449, 453 (Mo. banc 1964) ("Generally a court of equity is without jurisdiction to interfere with the enforcement of the criminal law."); *Burnau v. Whitten*, 642 S.W.2d 346, 346 (Mo. banc 1982) ("Generally, courts of equity are without jurisdiction to enjoin enforcement of criminal statutes."); *see also City of Kan. City v. Mary*

7

*Don Co.*, 606 S.W.2d 411, 415 (Mo. App. W.D. 1980) ("It is true, generally speaking, that a court of equity will not permit itself to be used as a medium for the enforcement of criminal laws or quasi-criminal ordinances.").[4] There are sound policy reasons why courts should not be used to civilly enforce criminal laws, including the difference in the burden of proof between a criminal prosecution and an action for equitable relief. Further, courts should avoid encroaching on the constitutional and statutory duties of prosecutors to enforce the criminal laws by permitting private litigants to seek enforcement through a civil action for declaratory or injunctive relief.

---

[4] We acknowledge that *Eagleton* and its predecessors and progeny describe this legal principle in terminology that has been denounced in modern Missouri jurisprudence, by referring to a "court of equity" being "without jurisdiction" to interfere with the enforcement of criminal statutes. *See State ex rel. Leonardi v. Sherry*, 137 S.W.3d 462, 471 (Mo. banc 2004) ("Even though the Missouri constitution merged the jurisdiction of equity and law in 1823 and generally vested their combined jurisdiction in the courts," references to "equitable courts" or courts having "equitable jurisdiction" "continue to be used"; "Using [such] terms to discuss litigation in modern courts is a misnomer insofar as the constitution eliminated any separate legal or equitable jurisdiction."). "Rather than referring to jurisdiction, labeling an action as equitable or legal in the modern sense typically bespeaks the type of relief being sought." *Id.* "Equitable remedies are coercive remedies like declaratory judgments and injunctions . . . ." *Id.* Additionally, the Missouri Supreme Court clarified in *J.C.W. ex rel. Webb v. Wyciskalla*, that Missouri circuit courts recognize only two kinds of jurisdiction: subject matter and personal. 275 S.W.3d 249, 252 (Mo. banc 2009). Subject matter jurisdiction is "the court's authority to render a judgment in a particular category of case." *Id.* at 253. Missouri circuit courts have subject matter jurisdiction over all civil cases. *Id.* at 254.

Despite the use of obsolete terminology in *Eagleton* and like cases, we nonetheless conclude that the legal principle set forth in these cases—that Missouri courts generally lack authority to enter a declaratory judgment or order injunctive relief that interferes with the enforcement of criminal statutes—remains good law. *See State v. Molsbee*, 316 S.W.3d 549, 553 (Mo. App. W.D. 2010) ("Although [the court in an earlier decision] spoke in terms of 'jurisdiction,' we assume that the court was talking, in pre-*Webb* terms, about the *authority* of the trial court, and we further assume that the 'change of law' principle remains viable as a principle of law."); *see also McCracken v. Wal-Mart Stores East, LP*, 298 S.W.3d 473, 477 (Mo. banc 2009) ("to the extent that some cases [pre-*Webb*] have held that a court has no jurisdiction to determine a matter over which it has subject matter and personal jurisdiction, those cases have confused the concept of a circuit court's jurisdiction . . . with the separate issue of the circuit court's *statutory or common law authority* to grant relief in a particular case").

However, there is an exception to the rule that courts do not provide civil equitable relief relating to a criminal statute: "[A]n exception to the general rule exists where the criminal law in question is unconstitutional or otherwise invalid and the attempted enforcement would constitute a direct invasion of property rights resulting in irreparable injury." *Eagleton*, 378 S.W.2d at 453; *see also Burnau*, 642 S.W.2d at 346. "The two elements of statutory invalidity and irreparable injury must both be present and clearly appear in order for the exception to be effective." *Eagleton*, 378 S.W.2d at 453-54. Consistent with this exception, courts entertain declaratory judgment actions concerning a criminal law where the action challenges the constitutionality or validity of the law. *See, e.g.*, *Alpert v. State*, 543 S.W.3d 589 (Mo. banc 2018); *Nicolai v. City of St. Louis*, 762 S.W.2d 423 (Mo. banc 1988).

Plaintiffs have not challenged the constitutionality or validity of section 572.010, and they attempt to avoid application of the legal principles set forth in *Eagleton* by asserting (1) section 572.010 is not a criminal statue and (2) even if section 572.010 were deemed criminal, Missouri courts are authorized under the Declaratory Judgment Act to "issue declarations concerning the construction" of criminal laws and "have rendered such decisions on many occasions."

First, we find that Plaintiffs sought a declaratory judgment regarding a criminal statute. Section 572.010—which is located in the Criminal Code—defines "gambling" and a "gambling device." Section 572.010 also defines when gambling is a crime, and when it is not: gambling is not a crime if it is licensed. § 572.010(4). Plaintiffs are not licensed to conduct gambling activity. Possessing a "gambling device" without being licensed and

9

promoting gambling in the first degree via operation of a "gambling device" without being licensed are crimes. §§ 572.070, 572.030. Thus, the declaration Plaintiffs seek—whether the devices are "gambling devices" under section 572.010(5)—effectively determines whether the devices are criminal. Such a declaration would interfere with the enforcement of criminal law; Plaintiffs concede as much on appeal, asserting "[i]f the trial court enters declaration in Plaintiffs' favor, there will be no valid 'law enforcement action' with which to interfere."

Although Plaintiffs state section 572.010 "simply defines various terms" and does not itself impose punishment, and the terms defined in section 572.010—including "gambling device"—are also used in civil statutes, these arguments ignore the context in which Plaintiffs have sought a declaratory judgment in this case. Plaintiffs alleged in their amended petition that the Highway Patrol determined Torch's devices were illegal gambling devices and seized them pursuant to a warrant, the Highway Patrol and DPS "have actively communicated their position to multiple prosecutors," and based on these communications "prosecutors across Missouri are taking different interpretations of the law and different enforcement positions." They sought a declaration that Plaintiffs "have the legal right" to operate Torch's devices without seizure from law enforcement. It is evident from Plaintiffs' amended petition that their objective in bringing this lawsuit is to enjoin law enforcement from determining the devices are criminal and seizing them. We are not persuaded by Plaintiffs' attempts to characterize their claim as one seeking declaratory judgment interpreting a civil statute. Section 572.010 is criminal in nature. *Cf. United Distribs. v. Dep't of Pub. Safety, Div. of Liquor Control*, 31 S.W.3d 49, 51-52

10

(Mo. App. W.D. 2000) (rejecting the Division of Liquor Control's argument that enforcement of its regulation was criminal in nature and thus "the trial court erred in granting equitable relief because it did not have jurisdiction to enjoin the enforcement of criminal laws": the regulation did "not purport to make the activity defined in the regulation either lawful or unlawful nor to attach any penalty thereto" and the purpose of Liquor Control's enforcement of the regulation was "to control licensed alcoholic beverage-selling businesses, not to determine whether gambling activities are unlawful and assess criminal punishment").

Having determined that the statute at issue is criminal, we next turn to Plaintiffs' contention that Missouri courts authorize declaratory judgment actions interpreting criminal statutes without an accompanying challenge to the constitutionality or validity of the statute, which directly contradicts *Eagleton*'s holding that the element of "statutory validity" must "be present and clearly appear in order for the exception to be effective." *See* 378 S.W.2d at 453-54. In support of their argument, Plaintiffs rely on cases where courts have interpreted Missouri's Sex Offender Registration Act ("SORA") and declared whether an individual is required to register as a sex offender, without the individual attacking the constitutionality or validity of SORA. These cases do not support Plaintiffs' position, however, because Missouri's sex offender registration laws have been held to be civil in nature, not criminal. *See R.W. v. Sanders*, 168 S.W.3d 65, 69-70 (Mo. banc 2005) (analyzing whether Missouri's sex offender registration statues are "civil or criminal" and determining the statutes "are civil and regulatory in nature"); *see also Roe v. Replogle*, 408 S.W.3d 759, 767 (Mo. banc 2013) (the registration statutes are "civil and not punitive");

11

*State v. Wade*, 421 S.W.3d 429, 435 n.8 (Mo. banc 2013). Plaintiffs provide no other support for their contention that a party can obtain a declaratory judgment about a criminal law without challenging the law's constitutionality or validity, as required by *Eagleton*.[5]

In sum, Plaintiffs have sought a declaratory judgment and injunctive relief that would interfere with the enforcement of the criminal laws of Missouri. Plaintiffs have not challenged the constitutionality or validity of section 572.010, thus they are not exempt from the general rule that Missouri courts do not grant equitable relief that would interfere with the enforcement of criminal law. As a result, we find the trial court did not err in dismissing Plaintiffs' amended petition. *See Burnau*, 642 S.W.2d at 346-47 (the trial court "properly dismissed [the appellants'] petition" for injunctive relief because they "failed to establish an exception to the general rule prohibiting equitable interference with criminal statutes"); *see also State ex rel. Cervantes v. Bloom*, 485 S.W.2d 446, 448 (Mo. App. 1972) ("Absent a determination of invalidity [of the ordinance], one of the elements to support the exception was missing and the temporary injunction should not have been issued."); *Cottleville Cmty. Fire Prot. Dist. v. Morak*, 897 S.W.2d 647, 648 (Mo. App. E.D. 1995) ("an interpretation of the rights of the litigants in this case [was] not authorized by the declaratory judgment act" because they sought a declaration interpreting the meaning of a criminal statute).

---

[5] Plaintiffs assert that *Eagleton* and like cases have "been superseded by modern Supreme Court precedent, which makes clear circuit courts have jurisdiction over any and all civil disputes and the power to issue any relief requested." But as we explained in footnote four, *supra*, we find that the principle espoused in *Eagleton* remains good law, despite the Court's references to a "court of equity" lacking "jurisdiction" to interfere with the enforcement of criminal law.

For these same reasons, we find the trial court did not err in dismissing the Gaming Association's counterclaim. As the Gaming Association acknowledges on appeal, "Essentially, Torch asks the court to declare its devices are not 'gambling devices' and therefore 'legal' and [the Gaming Association] asks the court to declare that the devices are 'gambling devices' and therefore 'illegal.'" Like Plaintiffs, the Gaming Association sought a declaration from the trial court interpreting a criminal law. In its counterclaim, the Gaming Association requested the trial court declare that Plaintiffs are operating "an unlawful gambling activity" proscribed by chapter 572 and section 313.830 (a statute that sets forth various gambling offenses and their criminal penalties), Torch's devices are illegal slot machines and gambling devices under chapter 572, and Torch's devices are illegal lotteries under chapter 572 and Article III, Section 39(9) of the Missouri Constitution. As described above, Missouri courts do not provide equitable relief that interferes with the enforcement of criminal law absent a challenge to the law's constitutionality or validity. The Gaming Association has raised no such challenge. Accordingly, we find the trial court properly dismissed the Gaming Association's counterclaim as well.

## Conclusion

The judgment of the trial court is affirmed.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.

13